**Duane R. METCALF and Joan Metcalf, Appellants,**

v.

**WILBUR, INC., an Alaska Corporation, and Jerry Lent, Appellees.**

**No. 5233.**

Supreme Court of Alaska.

May 21, 1982.

---

Clyde C. Houston, and Laurel Peterson, Houston, Henderson & Peterson, Anchorage, for appellants.

Robert L. Eastaugh, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for appellees.

Before RABINOWITZ, C.J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Chief Justice.

Duane R. Metcalf, a passenger, was injured when a twin engine Cessna 402 aircraft, owned by Wilbur, Inc., crashed shortly after take-off from Merrill Field in Anchorage. Metcalf brought suit against Wilbur, Inc. and Jerry Lent, the pilot, for personal injuries. His wife sued for loss of consortium.

After trial by jury, verdicts were returned in favor of Lent and Wilbur, Inc. Thereafter the superior court denied the Metcalfs' motions for judgment n. o. v. or in the alternative for a new trial. This appeal followed.

I

FACTS

Lent testified that as he began the take-off roll, he raised the nose wheel and having raised it more than he had intended to, unexpectedly set off the stall warning.[1] Lent then lowered the nose wheel and continued the roll. When the plane reached take-off speed of 105 MPH, Lent again raised the nose in order to obtain the proper attitude for ascent. After lifting off from the runway, the stall warning sounded again. The aircraft attained an altitude of approximately 50 feet above the runway. At this point the plane went into a left bank. Lent was able to level the wings and "just about that time" the plane crashed.[2] Lent further testified that it was his opinion that the cause of the Cessna's crash was icing of the propellers, which condition could not be detected until it affected the flying capability of the plane.[3]

The Metcalfs produced evidence that accumulations of snow on the aircraft's wings were not removed prior to the take-off.[4] Norman Horton, an expert witness, testified that in his opinion the Cessna crashed because it was overloaded and because of the presence of ice and snow on portions of the wings.[5] In contrast to this evidence, Lent testified that he had examined the wings as part of his pre-flight inspection and found them free of ice and snow. Lent additionally testified that snow adhering to the right wing, where a passenger had testified he observed snow, would have caused the right wing to lower, but in fact it was the left wing that dipped immediately prior to the crash.

The Metcalfs also introduced evidence that the Cessna had been loaded beyond its rated capacity by some 824 pounds. Lent and Wilbur, Inc. countered with the testimony of Frank Malone, the National Transportation Safety Board inspector who investigated the accident. According to Malone, the plane was 370 pounds overweight rather than 824 pound overweight.[6]

The weather at the time of the take-off was in dispute. Several of the passengers testified that there was "freezing rain," "sort of an icy rain," and that "there was a little bit of ice already gathering [on top of the wings]." The Metcalfs' expert witness Norman Horton testified that the weather

1. The nose wheel may have left the ground at that point, a distance between one-sixth and one-fourth the length of the runway.

2. The aircraft's landing gear had not been retracted prior to impact.

3. Lent further testified that the propeller icing probably occurred from the time that the engines were started and "[c]ertainly ... during the taxi time and during the take off."

4. One passenger who was helping to load baggage on the plane concluded that there was ice on the wing because boxes placed on the wing slid easily. Lent and Wilbur, Inc. introduced evidence that the Cessna's wings have a smooth painted surface and that an object set on them would slide off even in the absence of ice on the wing.

5. Horton testified in part as follows:
 My conclusion is that this aircraft would not fly on that day because of, one, overload which increased all the requirements for flight; and, two, ice and snow covering portions of the wing, which reduced the lift available to the aircraft.

6. Appellees also adduced evidence that Malone's estimate might have been inaccurate because the baggage could have absorbed water from the fire-fighting efforts which were undertaken subsequent to the crash.

reports would have made him anticipate a freezing condition. Joe Wilbur testified it was foggy but that there was no freezing rain in the area of Merrill Field. Harold Getzan, a passenger, testified that "it was kind of misty . . . and straight up in the air there was a great big blue spot." Horton also testified that the weather reports indicated that there was a freezing drizzle at Anchorage International Airport, but no freezing drizzle at Merrill Field.[7]

The superior court instructed the jury that overweight and out-of-balance operation of the plane violated the operating limitations of the aircraft and constituted negligence *per se* if they found that the aircraft was in fact overweight or out-of-balance. The jury was instructed as to the duty of the pilot-in-command to determine the airworthiness of the craft and his responsibility for its operation. The jury was further instructed that it is negligence *per se* to take-off with ice or snow adhering to the propeller, wings, or stabilizing or control surfaces, or with unpolished frost adhering to the plane. The superior court also instructed the jury, based upon FAR (Federal Aviation Regulation) 135.85(b)(2), currently 14 C.F.R. 135.227, that it is negligence *per se* to take-off on a VFR [Visual Flight Rules] flight into light or moderate icing conditions without deicing equipment for each propeller. The superior court decided not to instruct the jury on FAR 135.-85(b)(1), concerning take-off under IFR [Instrument Flight Rules] in icing conditions, nor on those parts of FAR 135.85(b)(2) that prohibit take-off under VFR into icing conditions without certain other deicing equipment (windshield, wing, stabilizing or control surface, plus certain instruments). The jury was also not given a *res ipsa loquitur* instruction.

In this appeal, the Metcalfs advance the following specifications of error: the superior court erred in not giving a *res ipsa loquitur* instruction; the court erred in failing to instruct the jury that Wilbur, Inc., could be subject to liability for "direct operations negligence" even if Lent were not negligent; error was committed in refusing to give certain negligence *per se* instructions; and the superior court erred in denying their motion for judgment n. o. v.

## II

### *Res Ipsa Loquitur*

The Metcalfs contend that it was error for the superior court to have failed to give the jury a *res ipsa loquitur* instruction in the factual context of the instant case. The record reflects that the Metcalfs withdrew their requested *res ipsa loquitur* instruction and that they subsequently failed to object when such an instruction was not given to the jury.[8]

Given the Metcalfs' unambiguous tactical decision to withdraw their proposed *res ipsa loquitur* instruction and their subsequent failure to object to the court's failure to include a *res ipsa loquitur* instruction in those that were given to the jury, we conclude that this specification of error is lacking in merit.[9] In short, the Metcalfs

---

7. The Metcalfs also presented testimony that the plane was out of its balance envelope (CG envelope). Lent and Wilbur, Inc. introduced evidence that the plane was not out of balance.

8. Judge Souter's affidavit states in part:
 During one off-record conference . . . Laurel Peterson, [co-counsel for the Metcalfs] stated he wished to withdraw a proposed instruction on the doctrine of *res ipsa loquitur*—and was permitted to do so.
 . . . .
 At a subsequent off-record conference at which Mr. Houston (Metcalfs' co-counsel) was present, he raised the question of whether plaintiffs' *res ipsa loquitur* instruction would be given. At that time, Mr. Peterson told him that it had been withdrawn from the record and that he would discuss the reasons for withdrawing it with Mr. Houston later.
 Judge Souter further averred that no subsequent mention was made by the Metcalfs' counsel regarding the need for a *res ipsa loquitur* instruction.

9. Inherent in our holding is the conclusion that in the context of this case it was not plain error for the superior court to have omitted an instruction on the doctrine of *res ipsa loquitur*.
 In regard to the Metcalfs' omission to object to the court's failure to instruct on *res ipsa loquitur*, Alaska R.Civ.P. 51(a) provides:
 At the close of the evidence or at such earlier time during the trial as the court reasonably

waived any objection they had to the superior court's omission of a *res ipsa loquitur* instruction.

## III

### Direct Operational Negligence

■ The Metcalfs requested an instruction which would have allowed the jury to find Wilbur, Inc. liable if Lent or any other Wilbur, Inc. employee had been negligent in the loading, preparation, or operation of the aircraft. The superior court instructed the jury that they could find Wilbur, Inc. liable if the injuries to the Metcalfs were caused by Lent's negligence.[10] The gist of the Metcalfs' contention here is that Lent could have carried out his loading and piloting of the aircraft without any negligence on his part, because he was simply following practices prescribed by his employer, and Wilbur, Inc. could be found negligent in prescribing and endorsing these negligent practices or procedures.

As pilot in command, Lent is required, under FAR 91.29(b), to ascertain the airworthiness of his craft before flying.[11] Thus, it was Lent's duty to detect any negligent preparation done by another employee of Wilbur, Inc. and to correct it before beginning a flight. The jury was instructed that if it found that Lent had violated

any of his duties arising under the applicable federal regulations then "prima facie proof has been established that defendants were negligent." The regulations, in requiring Lent to ascertain the airworthiness of the airplane before take-off, imposed upon him a duty to detect the negligence of any other employee in preparing the plane and to correct such negligence before commencement of flight. Thus, Lent could be found negligent for failing to detect that another Wilbur, Inc. employee failed to completely remove snow or ice from the aircraft's wings, or had loaded the plane so that it was out-of-balance.

In light of the foregoing, we conclude that the superior court's instructions adequately apprised the jury of the appropriate basis for determining Wilbur, Inc.'s liability.[12]

## IV

### Negligence Per Se Instructions

The Metcalfs have attacked the superior court's formulation of its instructions to the jury on a number of grounds. In particular, the Metcalfs argue that the jury should have been instructed on FAR 135.85(b)(1), prohibiting flight "[u]nder IFR into known or forecast light or moderate icing conditions . . . ."[13] The superior court refused

directs, any party may file written requests that the court instruct the jury on the law set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.

10. The instruction in question reads:
 Wilbur, Inc., is a corporation, and as such can act only through its officers and employees. Any act or omission of an officer or employee acting within the scope of his authority or employment is in law the act or omission of such corporation. Therefore, if you find that any negligence by Gerald S.

Lent was a proximate cause of any damages suffered by plaintiffs, then you must also find the corporation, Wilbur, Inc., liable for those damages so caused.

11. The jury was instructed as to the content of this Federal Aviation Regulation. Further, FAR 91(3)(a) provides that "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."

12. Although we have concluded that the giving of the questioned instruction was not error, on retrial a more accurate and informative instruction would apprise the jury that Wilbur, Inc.'s liability could also be based on the negligence of any member of Wilbur, Inc.'s ground crew.

13. FAR 135.85(b) reads in full:
 (b) Except for an airplane that has ice protection provisions that meet the requirements in section 34 of Special Federal Aviation Regulation No. 23, or those for transport catego-

to instruct the jury in regard to this particular federal regulation because it was of the view that "it is clear as a bell that the take-off was VFR."

 Thus, our threshold inquiry is focused on whether the jury was presented with evidence from which it could conclude that the area in the vicinity of Merrill Field was experiencing "known or forecast moderate icing conditions," (the prerequisite to the FAR's application to the flight). We conclude that there was sufficient evidence in the record from which the jury could have decided that there were known or forecast moderate icing conditions in the area of Merrill Field at the relevant time. The Metcalfs' expert witness Horton testified that the reported weather conditions would have lead him to anticipate icing. Malone, an expert witness for Wilbur, Inc. and Lent, testified in cross-examination that, given the weather reported on the day of the flight, he "might take [icing conditions] into consideration" in deciding whether or not to fly. Malone further testified that the conditions described by weather reports "could be" considered known or forecast light or moderate icing conditions and that if a pilot were to commence flight after having received all of the information in the weather reports in the record, he would be in violation of the federal regulations.

The foregoing evidence, in conjunction with the passengers' testimony concerning the weather conditions which was discussed at the outset, leads us to conclude that there was a sufficient evidentiary basis for the jury to conclude that the prerequisite to the applicability of FAR 135.85(b)(1) had

been established. There was sufficient evidence for the jury to reach the conclusion that there were known or forecast moderate icing conditions and that Lent knew of or should have known of these conditions.

 This brings us to our second inquiry in regard to the question of whether the Metcalfs were entitled to an instruction based upon FAR 135.85(b)(1). If the flight was VFR rather than IFR, as the superior court ruled, then the Metcalfs were not entitled to have the jury instructed as to the consequences of a violation of FAR 135.85(b)(1) which prohibits flying under IFR into known or forecast moderate icing conditions.

Lent's flight plan listed the proposed route as: V427IL1Y. Betty Van Manin, a flight controller, interpreted that notation as follows: "That means he's going Merrill Victor 427 to Iliamna. And then the Y indicates he's changing at that time to VFR".[14] Another flight controller testified that Lent's flight plan was an IFR plan. Most significantly, Lent himself testified that he filed a flight plan which indicated that the first portion of the flight would be under IFR, and that later in the flight he planned to switch to VFR. Lent testified, "Well, I expected to be operating IFR during the initial take-off and during climb to about 6,000 feet, which would have been a few miles south-southwest of Anchorage".[15] There is nothing in the record which contradicts Lent's testimony that he expected to be operating IFR during the initial take-off and climb out of the Anchorage area.[16]

In light of the foregoing, we conclude that the superior court erred in ruling that

ry airplane type certification, no pilot may fly—
 (1) Under IFR into known or forecast moderate icing conditions; or
 (2) Under VFR into known light or moderate icing conditions; unless the aircraft has functioning de-icing or anti-icing equipment protecting each propeller, windshield, wing, stabilizing or control surface, and each airspeed, altimeter, rate of climb, or flight attitude instrument system.
IFR stands for "instrument flight rules," and VFR stands for "visual flight rules."

**14.** The witness also testified that Lent had filed an IFR plan.

**15.** Lent further indicated that he anticipated operating IFR out of Anchorage for some 15 to 20 miles. At another point in his testimony, Lent stated that the flight plan which he filed was a "composite of IFR and VFR flight plan."

**16.** The record is also devoid of any indication that Lent altered the flight plan he originally filed.

the flight in question was VFR.[17] Since the Metcalfs' requested instruction grounded on FAR 135.85(b)(1) was refused on the basis that the flight was not under IFR, we conclude that it was error on the superior court's part to refuse to give the requested instruction.[18]

We further hold that the superior court's refusal to give the requested instruction cannot be viewed as harmless error.[19] If the jury had found, as it could, that "known or forecast moderate icing conditions" existed at the time of take-off and it had further found that the flight was an IFR flight, then it would have been a violation of FAR 135.85(b)(1) on Lent's part to have taken off. Since both parties' theories concerning the cause of the crash involve the accumulation of ice on the aircraft, a jury could reasonably conclude that a violation of FAR 135.85(b)(1), which admittedly bars taking off into icing conditions under IFR,[20] was a proximate cause of the crash and thus rendered Lent and Wilbur, Inc., liable.[21]

**17.** Employing a "clearly erroneous" standard, we reach this conclusion. "Where a finding leaves the court with the definite and firm conviction on the entire record that a mistake has been made, it is clearly erroneous." *Cousineau v. Walker*, 613 P.2d 608, 612 (Alaska 1980) (citation omitted).

**18.** So long as there was evidence introduced at trial to support a theory that Lent and Wilbur, Inc. were negligent under FAR 135.85(b)(1) relating to IFR take-offs, it was error for the superior court to refuse to instruct the jury on that section of the regulations. In *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980), we said:

> Ordinarily, a plaintiff is entitled to an instruction consonant with the theory of her case if such enjoys evidentiary support.

(Citation omitted.)

**19.** Alaska R.Civ.P. 61; *Love v. State*, 457 P.2d 622 (Alaska 1969).

**20.** Appellees' expert Malone stated that under the regulations one is "forbidden to fly into a— a— an area that has forecast icing."

**21.** The Metcalfs also advance the assertion that the superior court erred on the manner in which it instructed the jury regarding the provision of FAR 135.85(b)(2) governing flying under VFR into known light or moderate icing

V

*Judgment N.O.V.*

The Metcalfs have urged us to enter a judgment n. o. v. in their favor on the issue of liability. In the superior court, the Metcalfs did not move for a directed verdict at the close of the trial, an omission they now concede, "[i]n hindsight," was unwise.

■ Civil Rule 50(b), governing motions for judgment n. o. v., provides, in part:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or·for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after the entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10

conditions. *See* note 13, *supra*, for the full text of FAR 135.85(b)(2). The superior court omitted from its instruction in question any reference to functioning deicing or anti-icing equipment protecting the windshield, wings, stabilizing or control surface. Thus the jury was instructed that no pilot may fly

> (2) Under VFR into known light or moderate icing conditions;
> unless the aircraft has functioning deicing or anti-icing equipment protecting each propeller.

In the factual context of the case at bar we conclude that the superior court's instruction relating to FAR 135.85(b)(2) was not erroneous. The Metcalfs did not produce any evidence that having deicing equipment protecting the windshield, wings, stabilizing or control surface would have prevented the accumulation of ice during the take-off. The Metcalfs' expert witness, Horton, testified that he did not "believe this aircraft accumulated any ice on the take-off which would have been removable by de-icing equipment even if he had had it." Given the absence of an evidentiary basis for the drawing of a reasonable inference that the lack of functioning deicing equipment protecting the windshield, wings, stabilizing or control surfaces of the aircraft was a proximate cause of the crash, the superior court's instruction relating to FAR 135.85(b)(2) was not erroneous.

days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict.

On its face, the rule contemplates that a party must have moved for a directed verdict in order to be eligible to move for a judgment n. o. v. This court has yet to directly address this issue; the federal cases interpreting the identically-worded federal rule 50(b) governing judgments n. o. v. have held that a motion for a directed verdict is a prerequisite to a motion for judgment n. o. v. 5A *Moore's Federal Practice*, ¶ 50.08 (2d ed. 1980). In *Rawls v. Daughters of Charity of Saint Vincent de Paul, Inc.*, 491 F.2d 141 (5th Cir. 1974), the court held that where a plaintiff had failed to move for a directed verdict at the close of the evidence and none of the plaintiff's proposed jury instructions could fairly be read as amounting to a request for a directed verdict, the appellate court could not consider the plaintiff's argument that the trial court had erred in refusing to grant a judgment n. o. v.

We think that the situation presented in this case is analogous to that in *Rawls.* The Metcalfs admit that they failed to move for a directed verdict. Furthermore, they do not argue that any of their requested instructions amount to a request for a directed verdict. Accordingly, we think the superior court's denial of the Metcalfs' motion for judgment n. o. v. should be affirmed on the basis that the Metcalfs failed to comply with the requirements of Civil Rule 50(b).

Additionally, assuming arguendo, that the Metcalfs had moved at trial for a directed verdict, we would still reach the conclusion that the superior court correctly denied the motion for judgment n. o. v.

A denial of judgment n. o. v. is to be reviewed according to the standard articulated in *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974):

> It is well established that the proper role of this court, on review of motions for directed verdict or for judgment notwithstanding the verdict, is not to weigh conflicting evidence or judge the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable men could not differ in their judgment.

At trial the Metcalfs advanced three theories of negligence on the part of Lent and Wilbur, Inc. These were that the take-off was attempted with ice and snow adhering to the wings of the aircraft, that the aircraft was overloaded, and that the aircraft was out-of-balance. Our review of the record indicates that the Metcalfs' factual underpinnings for each of these theories were contradicted by Lent's and Wilbur, Inc.'s evidence. Viewing the evidence in the light most favorable to Lent and Wilbur, Inc., the non-moving parties, we believe that reasonable jurors could have differed on the question of the existence of icing conditions in the vicinity of Merrill Field and on whether the weather reports placed or should have placed Lent on notice of the presence of icing conditions in the vicinity of Merrill Field. Similarly, the conflicting testimony regarding the accumulation of ice and snow on the Cessna's wings prior to take-off, the alleged overloading and the effects of any such overloading, and the craft's alleged imbalance lead us to the conclusion that reasonable jurors could have differed on all of these issues. Thus we find that the Metcalfs' arguments pertaining to the entry of a judgment n. o. v. are without merit.[22]

---

22. In conjunction with their motion for judgment n. o. v., the Metcalfs moved, in the alternative, for a new trial on the ground that the jury's verdict was contrary to the weight of the evidence. The superior court denied the motion stating in part it "is not convinced that the evidence is so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717 (Alaska 1975).

We note that in this appeal the Metcalfs have not separately specified as error the superior court's denial of their motion for a new trial. The standard of review of a denial of a motion for a new trial was recently articulated by this court in *Bailey v. Lenord*, 625 P.2d 849, 856 (Alaska 1981):

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. *Ahlstrom v. Cummings*, 388 P.2d 261,

REVERSED and REMANDED for a New Trial.

262 (Alaska 1964). If there was an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. On the other hand, where "the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust," a reversal of a denial of a new trial is proper. Finally, in reviewing the denial of a motion for a new trial, we must view the evidence in the light most favorable to the non-moving party. *City of Palmer v. Anderson*, 603 P.2d 495, 501 (Alaska 1979). (Footnote omitted). A motion for a new trial is different than a motion for a judgment n. o. v. in that it goes to the weight of the evidence presented at trial rather than the sufficiency of that evidence to support a verdict. 6A Moore's Federal Practice ¶ 59.08[5] at 59–155–58 (2d ed. 1974) states that "[a motion for a new trial] is addressed to the sound discretion of the trial court, which may set aside the verdict as contrary to the preponderance of the evidence, although a directed verdict or judgment n. o. v. is not justified." *See Sloan v. Atlantic Rich-*field Co., 541 P.2d at 723 n.11. We have stated that "[t]he matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of [the court's] discretion except in the most exceptional of circumstances and to prevent a miscarriage of justice." *Ahlstrom v. Cummings*, 388 P.2d at 262; *Sloan v. Atlantic Richfield Co.*, 541 P.2d at 723 n.11.

Given our conclusion that the trial court erred in failing to instruct as to FAR 135.-85(b)(1), it is not necessary to rule on the propriety of the superior court's denial of the motion for a new trial. Nevertheless, we deem the following observation appropriate. Our review of the entire record indicates that a persuasive argument might have been presented that the evidence in support of the verdict is so slight and unconvincing as to make the verdict plainly unreasonable or unjust. We note that in such exceptional circumstances, to prevent a miscarriage of justice, this court is empowered to find an abuse of discretion in the trial court's denial of a motion for new trial based on the sufficiency of the evidence.