Sharon G. RICHEY and Alan
Richey, Appellants,

v.

Glen M. OEN, individually, Aaron, Inc.,
d/b/a Rent–A–Wreck, Inc., an Alaskan
corporation, and Roy E. Straub, d/b/a
Rent–A–Wreck, Appellees.

No. S–4188.

Supreme Court of Alaska.

Jan. 24, 1992.

**1372**

band, Alan Richey, against Glen Oen, Aaron, Inc., d/b/a Rent–A–Wreck, and Roy Straub, d/b/a Rent–A–Wreck. Sharon Richey (Richey) was rear-ended by an automobile driven by Oen and rented by him from Rent–A–Wreck. Richey settled with Rent–A–Wreck and proceeded to trial against Oen. At trial, Oen claimed that Richey's injuries were due to a pre-existing condition. The superior court granted Richey's motion for a directed verdict on the issue of negligence and advised counsel that the issue of causation and damages would be submitted to the jury. Neither party objected to the superior court's ruling on this motion. Using a special verdict form, the jury found that Richey suffered no damages as a result of the accident. Richey moved for a judgment n.o.v. and a new trial. Both motions were denied by the superior court. Richey appeals. We affirm.

### I. Factual and Procedural History

On January 9, 1987, Richey was stopped in her car waiting for a signal light to change at the intersection of Arctic Boulevard and International Airport Road in Anchorage. Oen's car approached from behind, attempted to stop, and slid on ice into the rear of Richey's car.[1] Oen was visiting from Fairbanks and had rented the car earlier that day from Rent–A–Wreck.[2]

Larry D. Card and Laurel J. Peterson, Law Offices of Laurel J. Peterson, P.C., Anchorage, for appellants.

Larry Z. Moser and Bruce A. Moore, Pletcher, Weinig, Lottridge & Moser, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

### OPINION

MOORE, Justice.

This appeal arises from a personal injury action filed by Sharon Richey and her hus-

Richey filed suit against Oen and Rent–A–Wreck for personal injuries resulting from the accident. Richey dismissed Rent–A–Wreck and went to trial against Oen. At trial, the parties offered conflicting evidence as to the nature and extent of Richey's injuries. Richey testified that she experienced lower back pain immediately following the accident. She further testified that she complained of this to investigating traffic officer Kirkley, and claimed that as a result she left work and remained at home. The day following the accident, Richey visited her chiropractor, Dr. Nordstrom, who diagnosed her as suffering from an acutely traumatized lower back

---

**1.** Oen testified that his car was traveling at approximately fifteen miles per hour when it struck Richey's car.

**2.** The Rent–A–Wreck car did not have studded or all-weather tires.

disorder. Nordstrom immediately referred her to Dr. Hoversten, who prescribed muscle relaxants and pain medication.[3]

On February 10, 1987, Dr. Nordstrom referred Richey to Dr. Garner, an orthopedic surgeon. Doctor Garner testified that he examined her, reviewed her medical records and various test results, and concluded that she suffered from a herniated disc at the L–5, S–1 level. Richey testified that although she took medication and received cortisone injections and nerve blocks for the pain, she could not sleep, stand, or lie down for very long without experiencing pain. By August 1987, her condition had not improved. Consequently, on October 14, 1987, Richey underwent a laminectomy performed by Garner. Richey presented evidence that she lost almost six months of work and incurred in excess of $22,000 in medical expenses as a result of the accident.

Oen presented a different story at trial concerning Richey's injuries. Oen testified that his rental car simply "bumped" into Richey's car, resulting in only minor damage to her car. Oen testified that Richey never told him after the accident that she was in pain nor did he observe her to be in any discomfort. Oen claimed that "she said she had a little quirk in her back." Officer Kirkley testified that he did not recall Richey describing or exhibiting pain and that he "coded" the accident for "no injuries."[4]

The gist of Oen's defense was that Richey's physical injuries were preexisting, spanning "almost twenty years prior to her 1987 [rear-end] accident." Richey was involved in two automobile accidents in the 1960s, one of which was a rear-end collision and the other which required hospitalization. Richey also had two slip and fall accidents in 1978. On November 3, 1978, she slipped and fell down a flight of stairs at work. She suffered lower back pain, radiating leg pain, and numbness in her foot as a result of the fall. Six weeks

later, Richey suffered a second fall, which again resulted in lower back pain. She was treated by Dr. Dittrich, an orthopedic surgeon, for back pain resulting from the two falls. Doctor Dittrich testified that he had diagnosed Richey at the time as possibly suffering from a ruptured disc at the fifth lumbar vertebra. Doctor Nordstrom took x-rays of Richey and sent them to a radiologist, Dr. Cain, for interpretation. Doctor Cain reported that he found degenerative arthritis and narrowing of the disc space at L–5, S–1 in reviewing x-rays taken in 1981 and after the rear-end accident in 1987. Doctor Garner testified that when he operated on Richey he noticed some dense nerve scarring. Doctor Dittrich testified that the 1978 fall could have caused the nerve scarring observed by Doctor Garner. Finally, a neurologist, Dr. Pervier, reviewed Richey's medical records and testified that reports of Richey's pre-accident condition were consistent with a disc problem at the L–5, S–1 level.

At the close of all evidence, Richey moved for a directed verdict as to Oen's negligence. The court granted the motion, noting "[o]f course, the issue with regard to causation of injury and preexisting injury remains." The case was thereafter submitted to the jury. Using a special verdict form, the jury found that Richey suffered no injuries from the accident.

Richey then moved for a judgment n.o.v. or, in the alternative, for a new trial. The superior court denied both motions. Richey appeals here the denial of those two motions.

## II. Richey's Motion for Judgment N.O.V.

Richey argues that the superior court erred in not granting her motion for judgment n.o.v. for two reasons. First, she asserts that reasonable persons could not have concluded other than that she suffered "some" damages. Second, she con-

---

3. Doctor Nordstrom continued to treat her for several weeks following the accident for muscle spasms of the lumbar region.

4. Officer Kirkley testified that, as a matter of procedure, when he arrives at the scene of an accident he asks whether there are any injuries. He stated that he only reports "no injury" if the persons involved in the accident so indicate.

tends that the superior court committed an abuse of discretion in allowing a physician, Dr. Pervier, to give expert testimony.

■ Oen argues that the denial of the judgment n.o.v. should be affirmed because Richey failed to move for a directed verdict specifically as to damages and causation.

■ The standard of review for a denial of a judgment n.o.v. requires us to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment of the facts. *Mullen v. Christiansen*, 642 P.2d 1345, 1348 (Alaska 1982). In making this determination, we do not weigh conflicting evidence or judge the credibility of witnesses. *Holiday Inns of America v. Peck*, 520 P.2d 87, 92 (Alaska 1974).

■ Alaska Rule of Civil Procedure 50(b) provides in part: "[A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict...." Where a party fails to move for a directed verdict at the close of the evidence, a superior court's refusal to grant a judgment n.o.v. cannot be considered on appeal. *Metcalf v. Wilbur, Inc.*, 645 P.2d 163, 170 (Alaska 1982).

At the close of all the evidence, Richey's attorney stated, "Your Honor, if I may at this time formally of record move for a directed verdict based on the status of the evidence, all the evidence, that is before the Court *on the issue of negligence of the Defendant driver* [.]" (Emphasis added). Richey's attorney then proceeded to explain in detail how Oen's conduct was negligent and how Richey did absolutely nothing to contribute to the accident. Applying this court's ruling in *Green v. Plutt*, 790 P.2d 1347 (Alaska 1990), the superior court stated, "I will grant the motion for directed verdict and will instruct the jury that the issue of the Defendant's negligence is no longer before them." The court noted,

"[o]f course, the issue with regard to causation of injury and preexisting injury remains." Richey's attorney thereafter made a motion for a directed verdict as to joint tortfeasors, which the court denied.[5] Following the return of the jury's verdict, Richey moved for a judgment n.o.v., which the court denied.

The narrow question here is whether Richey's motion for directed verdict included the causation and damages issues ultimately resolved by the jury. In our opinion, it did not.

■ A party seeking to prevail in a negligence action must prove a duty, a breach of that duty, and an injury which was proximately caused by the breach. *Leigh v. Lundquist*, 540 P.2d 492, 494 (Alaska 1975). In proving its case, a party may choose to move for a directed verdict as to its entire case, *City of Palmer v. Anderson*, 603 P.2d 495, 501 (Alaska 1979), or only one part of its case, *Gregory v. Padilla*, 379 P.2d 951, 953 (Alaska 1963).

We read Richey's motion for a directed verdict as pertaining only to Oen's negligence, that is, to Richey's burden of proving that Oen owed her a duty to exercise due care and that Oen breached that duty. If Richey's attorney had intended the motion to include the causation and damages issue, he should have included them in either his argument in support of the directed verdict motion or a separate motion after the court stated it was letting the two issues go to the jury. Richey's attorney did neither and, consequently, Richey was precluded from moving for a judgment n.o.v. Under our ruling in *Metcalf*, Richey is barred from appealing the superior court's denial of the motion.

### III. Richey's Motion for a New Trial

Richey argues that the superior court erred in denying her motion for a new trial for two reasons. First, she contends that the superior court erred in allowing Dr. Pervier to give expert testimony. Second,

---

**5.** Richey's attorney neither articulated a motion for a directed verdict as to damages or causation, nor mentioned these issues when explaining why Richey should prevail on her directed verdict motion as to negligence.

she asserts that "[t]he evidence supporting the jury's verdict was so completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust."

Oen argues that the motion for a new trial was properly denied because the admission of Dr. Pervier's testimony does not warrant a new trial, the verdict is supported by the evidence, and the jury's finding of no causation relieved the jury of the duty to determine aggravation.

In *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439 (Alaska 1989), we stated the standard of review concerning the denial of a motion for a new trial:

> The decision to grant or deny a new trial is within the trial court's discretion. If there is an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. However, if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust, then we must reverse the denial of a motion for a new trial. In reviewing such denials, we must view the evidence in the light most favorable to the non-moving party.

*Id.* at 445 (quoting *Hayes v. Xerox Corp.*, 718 P.2d 929, 933 (Alaska 1986)).

A. Doctor Pervier's Testimony

██ Richey argues that the superior court erred in allowing Dr. Pervier to give his expert opinion without either sufficient hypothetical facts or credentials in accident reconstruction.

As Oen points out, however, Richey never proffered this argument as part of her motion for a new trial or in her statement of points on appeal. Although Richey did object on foundational grounds to Dr. Pervier's testimony during the trial, Richey is not appealing an evidentiary ruling concerning the admissibility of Dr. Pervier's testimony. Instead, she is appealing the superior court's denial of her motion for a

new trial. Thus, Richey's argument that the superior court erred in permitting Dr. Pervier's testimony is now raised for the first time. We find that because the superior court never considered whether admitting Dr. Pervier's testimony was grounds for a new trial, and because this case neither was tried to the court, *Isaacs v. Hickey*, 391 P.2d 449, 452 (Alaska 1964), nor warrants our use of the plain error rule, *Matter of L.A.M.*, 727 P.2d 1057, 1059 (Alaska 1986), Richey's argument here is waived for purposes of this appeal. *Evron v. Gilo*, 777 P.2d 182, 186 (Alaska 1989).

B. Whether There Is an Evidentiary Basis for the Jury's Verdict

██ The crux of Richey's argument is that she suffered at least "some" damages as a result of the accident and that the evidence suggesting otherwise is so completely lacking or is so slight and unconvincing as to make the jury's verdict plainly unreasonable and unjust.[6]

The question is a close one because there is a plethora of conflicting testimony concerning the nature and extent of Richey's lower back injury. On the one hand, Richey testified that she immediately experienced lower back pain about which she told Oen and Officer Kirkley. Oen testified, however, that she never said she was in pain, but that she felt "a little quirk" in her lower back. Officer Kirkley testified that he did not recall Richey complaining of any injuries. He further testified that he coded the accident for "no injuries" and would not have done so unless the parties had indicated that they were not injured. Richey testified that she called Dr. Nordstrom on the day of the accident and visited him in his office the following day. Doctor Nordstrom testified that he diagnosed her as suffering from an acutely traumatized lower back disorder and referred her to a physician who immediately prescribed muscle relaxants and pain medication. Richey testified that although she took the medication, she still could not sleep, stand, or lie

---

6. Richey also argues that the jury should have considered whether the accident resulted in an aggravation of a preexisting injury. The aggravation question was addressed in jury instruc-

tion 25 and was answered by the jury's determination on the special verdict form that Richey suffered no damages as a result of the accident.

down for any length of time without experiencing pain.

Yet Drs. Nordstrom, Cain, Dittrich, and Pervier testified that Richey suffered from a degenerative lower back condition which may have resulted from several previous accidents. In fact, as recently as two months before the accident, Dr. Nordstrom had treated Richey for pain in her lower back. Finally, Dr. Pervier testified that he did not believe that the accident caused any of Richey's injuries.

Oen argues here that Richey's lack of candor with respect to her preexisting injuries and the events surrounding the accident was a factor in causing the jury to find no causation. The jury heard her give the following testimony:

Q. Have you had any other falls prior to the accident that we are here for today?

A. No.

Q. Have you ever had any prior back pains?

A. No.

She admitted to seeing Dr. Nordstrom and stated:

Q. And, were you seeing him for some back pains during those times?

A. If that is what he has, than [sic] that's what I was seeing him for.

.    .    .    .    .

Q. Did you see any other doctors for back pain?

A. No.

Q. Have you ever had any other prior leg pains?

A. No.

Given these inconsistent and inaccurate statements and her inability to identify any damage or repair to her vehicle from the accident, the jury had the opportunity to disregard or take lightly her testimony on the issue of causation. *See Innes v. Beauchene*, 370 P.2d 174, 177 (Alaska 1962) (trier of fact may observe witness demeanor and choose to disbelieve even unrefuted testimony, especially where the testimony contains patent omissions and inconsistencies).

Construing the conflicting evidence in the light most favorable to Oen, as we must do, we are unable to say that the evidence indicating that Richey suffered no damages is so completely lacking as to make the jury's finding unreasonable or unjust. *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 447 (Alaska 1989); *Hayes v. Xerox Corp.*, 718 P.2d 929, 933 (Alaska 1989). Indeed, this evidence derives directly from *at least* three different persons (Officer Kirkley, Dr. Pervier, and Oen) and indirectly from other evidence presented by Oen as to Richey's prior medical history.

Nor can we say that this evidence is slight and unconvincing. Both Officer Kirkley and Oen testified—in direct contradiction to Richey's testimony—that Richey never stated or indicated she was in pain during the period immediately following the accident. Doctor Pervier testified that Richey's condition was not related to the accident. The jury was asked, in effect, to weigh this testimony and other evidence of Richey's prior medical history against the testimony of Dr. Nordstrom and Richey. A careful reading of Dr. Nordstrom's testimony, however, reveals that he stated only that Richey suffered an acute traumatization of her lower back. He neither stated nor suggested that her condition was a result of the accident.

▪▪▪ In the face of conflicting testimony, the jury determined that Richey suffered no injuries as a result of the accident. Jurors are entitled to disbelieve a witness or otherwise discount a witness's testimony. *Bailey v. Lenord*, 625 P.2d 849, 856 (Alaska 1981). Such credibility determinations made by the jury are generally left undisturbed by this court on review. *Jackson v. White*, 556 P.2d 530, 532 n. 4 (Alaska 1976). On the record before us, we cannot say that the evidence supporting the jury's conclusion is so slight or unconvincing as to render the verdict either unfair or unreasonable. Accordingly, the superior court did not err in denying Richey's motion for a new trial.

AFFIRMED.