*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JUSTIN PRALLE, | ) | |
| | ) | Supreme Court No. S-14881 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-11-01385 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JESSICA MILWICZ, | ) | |
| | ) | No. 6907 - May 9, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Deborah Burlinski, Burlinski Law Office, LLC, Anchorage, for Appellant. Gregory R. Henrikson, Walker & Eakes, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

MAASSEN, Justice.

## I.     INTRODUCTION

Jessica Milwicz negligently rear-ended a vehicle driven by Justin Pralle. In the lawsuit that followed, Milwicz admitted negligence but argued that she had not caused Pralle's injuries. A jury agreed with her, and judgment was entered in Milwicz's favor. Pralle appeals, arguing that the verdict was not supported by the evidence and that the superior court abused its discretion in its refusal to excuse several jurors for cause and its admission of expert testimony. We affirm the judgment.

## II.    FACTS AND PROCEEDINGS

In June 2009 Jessica Milwicz negligently rear-ended a vehicle driven by Justin Pralle while he was stopped at an intersection in Wasilla.  Pralle afterward complained of injury primarily in his neck and upper back, but over the months that followed he had complaints involving the rest of his back, hip, groin, shoulder, thumb, and elbow, in addition to headaches and facial numbness.  He had been in two earlier accidents, in 2004 and 2005, for which he was being treated by his longstanding chiropractor, Dr. Bobby Lucas, as recently as a month before his accident with Milwicz.  Dr. Lucas continued to treat Pralle after the accident.

Pralle sued Milwicz for personal injury.  Milwicz admitted her negligence, but she disputed that she had caused Pralle's injuries.  One of her witnesses at trial was Dr. John Ballard, who had conducted an independent medical evaluation of Pralle.  In his testimony, Dr. Ballard minimized any injury from the accident with Milwicz, instead attributing Pralle's injuries to conditions that had developed from his earlier accidents.  Pralle relied on the testimony of Dr. Lucas, who was allowed to testify as a "hybrid" expert witness based on his professional expertise and his direct experience as Pralle's treating physician.

The jury found that the negligence of Milwicz was not a substantial factor in causing injury to Pralle.  The superior court entered judgment in favor of Milwicz and awarded her attorney's fees and costs as prevailing party.

Pralle appeals.  He argues that there was insufficient evidence to support the jury verdict; that the superior court erred in its jury instructions; that the superior court abused its discretion when it failed to grant several challenges for cause of

prospective jurors; and that the superior court abused its discretion with regard to the testimony of the two medical witnesses, Dr. Ballard and Dr. Lucas.

## III.   STANDARDS OF REVIEW

When assessing whether the evidence presented at trial was sufficient to support a jury verdict, we review the record to determine whether " 'the verdict is contrary to the clear weight of the evidence,' "[1] our goal being to ascertain whether "there has been a miscarriage of justice."[2]  We "will not disturb a jury's verdict unless the evidence . . . is so clearly to the contrary that reasonable persons could not differ in their judgment."[3]  If there was no motion for a new trial or motion for judgment notwithstanding the verdict made in the trial court, we are "required to take the evidence and all inferences reasonably deducible [from the evidence] in the light most favorable to the appellee."[4]  We review the decisions of the superior court regarding challenges for cause in jury voir dire for abuse of discretion,[5] and we will "interfere with the exercise of that discretion only in exceptional circumstances and to prevent a miscarriage of

---

[1]      *Heynen v. Fairbanks*, 293 P.3d 470, 474 (Alaska 2013) (quoting *Bolden v. City of Kodiak*, 439 P.2d 796, 801 (Alaska 1968)).

[2]      *Id.* (internal quotation marks omitted).

[3]      *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1320 n.10 (Alaska 1997) (internal quotation marks omitted).

[4]      *Heynen*, 293 P.3d. at 474 (alterations in original) (internal quotation marks omitted).

[5]      *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988).

justice."**6** Similarly, we review the "trial court's decision to admit expert testimony for abuse of discretion and will reverse 'only when left with the definite and firm conviction that the trial court erred in its decision.' "**7**

## IV. DISCUSSION

### A. Sufficient Evidence Supports The Jury's Conclusion That Milwicz's Negligence Was Not A Substantial Factor In Causing Injury To Pralle.

Pralle challenges the jury verdict on two grounds. First, he argues that the jury's two-hour deliberation gave it insufficient time to consider all the evidence, and therefore the verdict cannot be valid. Pralle does not allege any other jury misconduct, nor does he cite any authority for the proposition that a jury must deliberate for a minimum amount of time in order for its verdict to stand. We have rejected challenges based on long deliberations,**8** and we have never reversed a verdict on grounds that the deliberation was too short. Case law from other jurisdictions indicates that new trials are

---

**6** *Id.* at 1275 (quoting *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964)) (internal quotation marks omitted).

**7** *Thompson v. Cooper*, 290 P.3d 393, 398 (Alaska 2012) (quoting *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 145 (Alaska 2004)).

**8** *See Kimble v. State*, 539 P.2d 73, 79-80 (Alaska 1975) (upholding jury verdict resulting from deliberations that were allegedly "21 or 22 hours [long] without access to adequate rest facilities," where there was a "total lack of evidence that fatigue or coercion was a factor in the verdict"); *West v. State*, 409 P.2d 847, 851-52 (Alaska 1966) (upholding jury verdict following 14 hours of deliberation, despite affidavit of juror who attested that he had succumbed to pressure because of fatigue and nerves, where "[t]he mental pressure and exhaustion experienced by [the testifying juror] [were] not shown to have been any greater than that experienced by the other jurors").

rarely granted on such grounds.[9] The jurors in this case were instructed to "examine the evidence carefully and decide how to evaluate it in light of the law . . . given . . . in these instructions"; to "conscientiously consider and weigh the evidence, apply the law, and work to reach a verdict"; and to decide the case "only after you have fully considered the evidence, discussed it with the other jurors, and listened to their views."[10] We presume that a jury follows the court's instructions, including broadly hortatory ones like these.[11] We therefore decline to hold, absent specific allegations of juror misconduct, that a two-hour deliberation is too short to result in a valid verdict.

Pralle's second challenge to the verdict is that the jury ignored the uncontroverted medical testimony on causation; he argues that both Milwicz's expert witness, Dr. Ballard, and Pralle's treating physician, Dr. Lucas, testified that the accident caused Pralle some injury. But Dr. Ballard's testimony was ultimately equivocal. He testified that "giving [Pralle] the benefit of the doubt on his history, going on his subjective complaints, I thought he had a mild cervical and thoracic strain." But this assessment was based on Pralle's "subjective complaints," and Dr. Ballard testified it was also possible to conclude that "with this amount of impact there would have been

---

[9] 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810 (3d ed. 2013). *See also Segars v. Atl. Coast Line R.R. Co.*, 286 F.2d 767, 770 (4th Cir. 1961) ("We know of no rule of law which prescribes how long a jury should be required to deliberate before returning its verdict. Of course, as was observed by the District Judge, the verdict should be the result of conscientious deliberation, but the fact that the verdict was returned within a few minutes does not necessarily show that the jury disregarded this duty, and it is not sufficient of itself to justify a new trial.").

[10] Jury Instructions No. 7 and No. 23.

[11] *Cent. Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 281 (Alaska 2002).

no injury and his symptoms could have been from all the preexisting problems." The jury reasonably could have concluded that Dr. Ballard's testimony did not require a finding of causation.

Moreover, other evidence supported the jury's verdict. After the accident neither party filed a police report, called for an ambulance, or went to the hospital. In the absence of other eyewitnesses, the jury had to rely on the accounts of the two persons involved in the accident as to what happened, and their accounts differed. Milwicz testified that she "tapped" Pralle's car while traveling at three or four miles per hour. Pralle testified that he thought she was moving faster and that he was "jolted" by the impact, his head whipping back and forth. Milwicz testified that she inspected the cars after the accident and found no damage to either car, and that Pralle agreed with her assessment. Pralle disputed this; he testified that he noticed a crinkling of paint on his vehicle about four to six inches long. Milwicz also testified that Pralle mentioned he had been in an unreported car accident a year before, that he had been seeing a chiropractor, and that he would continue seeing the chiropractor because of that earlier accident. Pralle testified that his neck felt stiff as soon as he got out of his car; he testified that he told Milwicz he would be visiting his chiropractor because of their accident, not because of an earlier one.

On appeal, we must view these conflicting accounts in the light most favorable to the party who prevailed at trial.[12] It is clear that Milwicz's testimony, if believed, supports the jury's conclusion that the accident caused Pralle no injury.

Furthermore, the jury heard other plausible explanations for Pralle's medical complaints. His first car accident, in January 2004, caused him back injuries

---

[12] *Heynen v. Fairbanks*, 293 P.3d 470, 474 (Alaska 2013).

that still bothered him when his next accident occurred nearly two years later. In the December 2005 accident, Pralle stretched ligaments in his neck and displaced vertebrae in his mid- and lower back. Between 2004 and the accident with Milwicz in 2009, Pralle had visited his chiropractor over a hundred times for treatment of his lingering injuries. His employer had bought him an ergonomic chair to help alleviate neck and back pain. While he testified at his deposition that he had been pain-free for at least six months before the 2009 accident, he had visited the chiropractor twice the month before, claiming neck pain of five or six on a ten-point scale. In addition, after the 2009 accident Pralle complained of symptoms in his lower back, elbow, wrist, and foot, as well as numbness or tingling in his hip and thumb. But Dr. Ballard testified that those injuries were unlikely to be related to the 2009 accident and, assuming that Pralle had suffered some neck strain, that it should have been fully resolved within two months. A reasonable jury could have found that weaknesses in Pralle's testimony reduced his credibility, and that any injury he still suffered was long-standing and unrelated to the accident at issue.

We considered similar facts in *Richey v. Oen*.[13] The plaintiff in *Richey* was rear-ended while stopped at a traffic light.[14] She testified that she complained of her injuries while at the accident scene, but this was disputed by both the defendant and the responding police officer.[15] The defendant claimed he had only bumped the plaintiff and there was hardly any damage to her car; he also contended that the plaintiff had been in a number of other auto accidents and falls during the preceding 20 years, causing her

---

[13]    824 P.2d 1371 (Alaska 1992).

[14]    *Id.* at 1372.

[15]    *Id.* at 1372-73.

injuries.[16]  The plaintiff had sought treatment for back pain as recently as two months before the accident.[17]  Her treating physician subsequently diagnosed her with an accident-caused injury, but another doctor testified that her condition was unrelated.[18]

The superior court entered a directed verdict on the defendant's negligence, but the questions of causation and damages were submitted to the jury, which found for the defense.[19]  On appeal, the plaintiff argued that "she suffered at least 'some' damages as a result of the accident and that the evidence suggesting otherwise [was] so completely lacking or [was] so slight and unconvincing as to make the jury's verdict plainly unreasonable and unjust."[20]  We concluded that the superior court did not err when it refused to grant the plaintiff a new trial:

> In the face of conflicting testimony, the jury determined that [the plaintiff] suffered no injuries as a result of the accident. Jurors are entitled to disbelieve a witness or otherwise discount a witness's testimony.  Such credibility determinations made by the jury are generally left undisturbed by this court on review.  On the record before us, we cannot say that the evidence supporting the jury's conclusion is so slight or unconvincing as to render the verdict either unfair or unreasonable.  Accordingly, the

---

[16]  *Id.* at 1373.

[17]  *Id.* at 1376.

[18]  *Id.* at 1375-76.

[19]  *Id.* at 1373.

[20]  *Id.* at 1375.

superior court did not err in denying [the plaintiff's] motion for a new trial.[21]

The present case closely parallels *Richey*. There are similar disputes about the seriousness of the accident, statements at the scene, the plaintiff's condition beforehand, the medical testimony, and causation. We are not convinced the result here should be any different. We "will not disturb a jury's verdict unless the evidence . . . is so clearly to the contrary that reasonable persons could not differ in their judgment."[22] Viewing the evidence and all reasonable inferences from it in favor of Milwicz, as we must,[23] we conclude that it is sufficient to support the jury's finding that her negligence was not the cause of Pralle's injuries.

**B.    The Trial Court Did Not Abuse Its Discretion When It Denied Pralle's Challenges Of Two Jurors For Cause.**

Pralle argues that the superior court erred when it refused to dismiss three jurors he challenged for cause pursuant to Alaska Civil Rule 47(c)(2) and (3).[24] The three challenged jurors were B.T., Z., and E.G.[25] The record unequivocally shows that

---

[21]    *Id.* at 1376 (internal citations omitted).

[22]    *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1320 n.10 (Alaska 1997) (internal quotation marks omitted).

[23]    *Heynen v. Fairbanks*, 293 P.3d 470, 474 (Alaska 2013).

[24]    Alaska R. Civ. P. 47(c)(2)-(3) ("The following are grounds for challenge for cause: . . . (2)  That the person is biased for or against a party or attorney.  (3)  That the person shows a state of mind which will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.").

[25]    We use initials to protect the jurors' privacy.  The full name of Juror Z. does not appear in the record.

E.G. *was* excused for cause on Pralle's request, however, and we therefore address only Pralle's challenges to B.T. and Z.

B.T. testified in voir dire that he had an unfavorable opinion of chiropractors; this was relevant information since Pralle's case relied on the testimony of Dr. Lucas, his treating chiropractor. Z.'s view of chiropractors was ambivalent — "They're good for some things and some things I don't think they're that good for." He also testified he would be less inclined to award damages to a plaintiff with only soft tissue injuries, which are the kind Pralle alleged.

After Pralle challenged these jurors for cause, the superior court questioned them further. B.T. responded that although he "might have a bias" against chiropractors, it would not overcome his ability to listen to the evidence. Z. likewise affirmed that he could put his personal feelings aside, follow the judge's instructions on the law, and be fair. The superior court thereupon denied the challenges for cause as to B.T. and Z.; in contrast, it granted the challenge for cause as to E.G., explaining that E.G. was apparently unwilling to fairly evaluate chiropractors' testimony "regardless of what they actually said." The superior court clearly gave thoughtful consideration to the issue.[26]

In *Beck v. State, Department of Transportation and Public Facilities*, we held that we would "only interfere with the sound discretion of the trial court to determine challenges of jurors for cause 'in exceptional circumstances and to prevent a miscarriage of justice.' "[27] We determined in *Beck* that a juror should have been dismissed for cause under Rule 47(c) when she admitted to personal knowledge of the facts of the case, had visited the accident scene, had formed an opinion about what had

---

[26]     Both B.T. and Z. were subsequently excused on peremptory challenges.

[27]     837 P.2d 105, 111 (Alaska 1992) (quoting *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1275 (Alaska 1988)).

happened, and expressed clear reservations about whether her mind could be changed by the evidence presented at trial and whether she could faithfully follow the court's instructions.[28] Here, in contrast, the challenged jurors affirmed that they could set aside their personal biases and decide the case on the evidence.

Rule 47(c)(3) does not require that a prospective juror be free of any positive opinions about the facts and outcome of the case; instead, it directs the court to examine whether the juror is willing to set those opinions aside and act fairly.[29] We noted in *Sirotiak v. H.C. Price Co.* that we do not require "unequivocal and absolute" impartiality of prospective jurors.[30] We observed, "[W]e doubt the truly honest juror could state unequivocally and absolutely that his or her biases will have no effect on the verdict. All that is required of a prospective juror is a good faith statement that he or she will be fair, impartial and follow instructions."[31] Here, the superior court elicited the required "good faith statement" from two of the three challenged jurors and excused the third. We cannot say that it abused its discretion when it accepted the two jurors' assurances that they could set aside their biases and be fair.

---

[28]     *Id.* at 111-12.

[29]     *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964) ("It is true that the challenged juror said that he would be more conservative than the average juror. But he also said that he felt he could be fair and impartial, that he would allow a justifiable award, and that he would follow the instructions of the court in arriving at a verdict. The judge had the opportunity to listen to what the juror said and to observe his demeanor. We cannot say that the judge was wrong in concluding that the juror's state of mind was such that he was able to render a just verdict.").

[30]     758 P.2d at 1277.

[31]     *Id.*

## C. The Trial Court Did Not Abuse Its Discretion In Its Rulings On Expert Testimony.

Pralle contends that the superior court erroneously restricted the expert testimony of his treating chiropractor, Dr. Lucas. He also contends that the superior court erroneously allowed Dr. Ballard, the defense's medical expert, to testify about matters outside his expertise, such as biomechanics. Pralle reasons that these two errors, in combination, unfairly invited the jury to give more weight to Dr. Ballard's expert opinion than to Dr. Lucas's.

The superior court characterized Dr. Lucas as a "hybrid" witness based on his status as a treating physician, and it permitted him to testify as follows:

> He can testify about his patient and what happened with his patient, but he is not allowed to testify in general about whiplash types of impacts or, you know, anything that a disconnected non-treating expert would testify about. So he can talk about what happened with Mr. Pralle based on what he knows, what his opinion is that happened to Mr. Pralle; diagnosis, causation in that limited framework, prognosis.[32]

Pralle claims that these restrictions on Dr. Lucas's testimony — limiting it to "what happened with Mr. Pralle" to the exclusion of "whiplash types of impacts" in general — violate the relevant standards for admissibility as discussed in *Thompson v. Cooper*.[33] In *Thompson*, we determined that a treating physician's testimony about

---

[32] *See Miller v. Phillips*, 959 P.2d 1247, 1250 (Alaska 1998) (noting that the trial court considered the plaintiff's treating physician, who had not been listed as a potential expert witness, to be a "hybrid" witness, and that "while he would be forbidden from testifying in general terms about the appropriate standard of care, he would be allowed to testify as to 'his expert observations' and 'his own opinion as to what he observed' ").

[33] 290 P.3d 393 (Alaska 2012).

medical causation should be allowed as experience-based expert testimony, not subject to the *Daubert* test for the admissibility of scientific expert testimony.[34] We explained the difference between the two with reference to our earlier opinion in *Marron v. Stromstad*, in which "we noted that experience-based testimony generally 'is not empirically verifiable or objectively testable,' and 'depend[s] on a more subjective application of the expert's practical experience to the particular facts of the case,' while 'scientific testimony is based on theory, and may be subjected to objective testing.' "[35]

The superior court in this case correctly characterized Dr. Lucas as a hybrid expert whose testimony was admissible based on both his expertise and his direct observations of his patient. Pralle contends, however, that the restrictions the superior court placed on Dr. Lucas's testimony kept him from testifying "that the injuries he observed with Mr. Pralle were or were not consistent with the type [of] vehicle accident which occurred in this case." But it appears that Dr. Lucas *did* give such testimony, and that he based it on both his professional expertise[36] and his direct observations as Pralle's treating physician. Dr. Lucas was asked on direct examination to explain how he went about determining, in the hypothetical case, "what injuries have been caused by the auto accident and what may not be caused by an auto accident" when a patient first came in to see him, and he responded by reference to his training in applied kinesiology, other

---

[34] *Id.* at 399. The *Daubert* test for the admissibility of scientific expert testimony is derived from *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-95 (1993).

[35] *Id.* at 399-400 (alteration in original) (footnotes omitted) (quoting *Marron v. Stromstad*, 123 P.3d 992, 1006 (Alaska 2005)).

[36] Dr. Lucas testified about his qualifications, his extensive experience treating patients injured in motor vehicle accidents, and the refresher courses he took annually related to the kinds of injuries at issue in this case.

classes he has taken, and his observations of the patient — "how they're standing [or] sitting" and how they hold their head. He testified generally about the motion of the head and the trauma likely to occur from a rear-end collision. He testified without objection that, following the 2009 accident, he determined that Pralle "had reinjured his neck. It had another hyperflexion type injury to the spine."

Pralle did not make any offer of proof in the superior court as to the substance of any additional expert testimony he would have elicited if allowed;[37] in fact, he remains equivocal in his appeal brief as to whether Dr. Lucas's testimony would have fully supported his position.[38] Nor does Pralle direct our attention to any questions that Dr. Lucas was asked but was not allowed to answer. Given these shortcomings in the record, and given the testimony that Dr. Lucas gave without objection despite the limitations placed on his testimony, we are unable to conclude either that the superior court's restrictions actually resulted in the exclusion of significant evidence or that the

---

[37] *See, e.g.*, *Adamson v. Univ. of Alaska*, 819 P.2d 886, 890 (Alaska 1991) (acknowledging "the principle that it is the appellant's burden to convince us that the [trial court's] decision to exclude the evidence was in fact prejudicial and not harmless"). *See also* Alaska R. Evid. 103(a)(2) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.").

[38] In his brief, Pralle writes that Dr. Lucas "should have been allowed to testify that the injuries he observed with Mr. Pralle were or were not consistent with the type [of] vehicle accident which occurred in this case."

restrictions affected any substantial right of Pralle's.[39]  We therefore have no basis on which to find an abuse of discretion.

In a closely interrelated argument, Pralle contrasts the restrictions placed on Dr. Lucas's testimony with what Pralle alleges was a much greater latitude given to the defense's witness, Dr. Ballard, who despite having "examined Mr. Pralle only once and reviewed his records, was permitted to testify as an expert witness regarding medical issues and issues of causation similar to a bio-mechanical expert."  Again, our review is hampered by Pralle's failure to direct us to specific places in the record that could substantiate his claims that Dr. Ballard testified beyond his expertise.

Dr. Ballard was qualified as an expert in orthopedic surgery, and Pralle does not challenge his qualifications in that field.  Like Dr. Lucas, Dr. Ballard was allowed to testify about causation and prognosis — issues that are generally within the competence of an examining physician.  To the extent Pralle is arguing that Dr. Ballard was allowed to give the opinions of an examining physician whereas Dr. Lucas was not, the record does not support the argument.  And like any qualified physician, including Dr. Lucas, Dr. Ballard was allowed to consider the likely mechanical forces of the accident as it was described by the parties involved, to the extent it helped him evaluate Pralle's injuries.

Again, we see no basis in the record for concluding that Dr. Ballard testified beyond his expertise; we are therefore unable to conclude that the superior court abused its discretion with regard to Dr. Ballard's testimony.[40]

---

[39]  *See* Alaska Evid. R. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

[40]  Pralle also asserts on appeal that the superior court failed to give a jury
(continued...)

## V.    CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[40](...continued)
instruction addressing concurrent cause and that this was plain error.  Our review of the record and the audio recording of the trial confirms that the instruction was in fact given, and we therefore do not consider the issue further.