Irma R. SCAVENIUS, Appellant,

v.

CITY OF ANCHORAGE, a Municipal
Corporation, Appellee.

No. 2193.

Supreme Court of Alaska.

Aug. 21, 1975.

Helen L. Simpson, Anchorage, for appellant.

David G. Shaftel, Asst. City Atty., John R. Spencer, City Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR and BOOCHEVER, JJ., and DIMOND, Justice Pro Tem.

## OPINION

BOOCHEVER, Justice.

We are confronted on this appeal with the unusual issue of whether a jury's award of $0.00 as just compensation to a property owner for the taking of an easement is patently inadequate or violative of constitutional provisions pertaining to eminent domain.[1]

The City of Anchorage brought an action to condemn easements for the construction, use and maintenance of a sanitary sewer line upon two non-adjacent parcels owned by the appellant, Irma R. Scavenius. The City filed a declaration of taking and deposited $2.00 as the estimated just compensation for the taking of these two easements. Subsequently, a master's hearing was held, and the master's report indicated that a total of $516.00 should be paid as just compensation for the taking of the two easements. This award consisted of $336.00 for the first easement and $180.-00 for the second. The property owner filed a notice of appeal from that decision pursuant to Alaska R.Civ.P. 72(h)(5),[2] and a jury trial was scheduled. After presentation by the parties of conflicting testimony concerning valuation, the jury concluded that $0.00 was the amount of just compensation to which the property owner was entitled.

---

1. The City filed a cross-appeal from the trial court's denial of the City's motion for allowance of attorney's fees and from the court's refusal to award costs to the City. Those issues had been consolidated on appeal with similar issues raised in the case of *City of Anchorage v. Park Lanes, Inc.*, Alaska, 539 P.2d 1169 and will be the subject of a separate opinion.

2. Alaska R.Civ.P. 72(h)(5) provides in part:
 A party or other interested person may appeal from the master's report by filing with the clerk a notice of appeal in duplicate, with sufficient additional copies for all parties who have appeared or answered.

The two parcels involved in this condemnation proceeding are located on the west bluff area of what is now the Westchester Lagoon. Parcel No. 1 consists of about 2.19 acres of undeveloped land. Parcel No. 2 is a rectangular lot measuring about 100 by 450 feet. Both lots are zoned R–1A for single family residences. The parcels are separated by a third, separately-owned parcel. The easement area on Parcel No. 1 is located where the generally downward grade toward the lagoon increases to about 25 percent. Parcel No. 2 has a residence located on the level portion near the street, but the easement area is located on the back of the parcel which drops off steeply into the lagoon. The sewer line has been installed at a depth of between seven and eight feet on Parcel No. 1 and between five and six feet on Parcel No. 2.

When the property owner appealed the master's award of $516.00 as compensation for the easements, the City, aware of the owner's fear that she would be prevented from constructing houses on the areas subject to the easement which, in turn, would interfere with the proper subdivision of that property in the future, moved to amend its complaint. The amendment provided that at the City's expense the ease-

ments would be subject to either rerouting or replacement with material not likely to require maintenance should the property owner decide to build in the easement area.[3] The property owner did not oppose the motion, file any objection to the amended pleadings nor at any time during the trial object to evidence offered by the City relating to the definition of the easement as contained in the amended pleadings.

At the jury trial, the City called George Mies, a real estate appraiser, as a witness to testify concerning the value of the taking. Mr. Mies testified that, in view of the limited scope of the easement, it was his view that the fair market value of the parcels had not been lessened. He stated: ". . . she hasn't lost anything, and it's a nominal value loss—maybe $1.00". In reaching this conclusion, he took into consideration the fact that several trees along the sewer line easement had been cut down. He believed that this also had a negligible impact on the fair market value of the property. Further, he observed that the tree removal operation had been quite selective, that the trees had been dug out and the area recovered with soil.[4]

3. The relevant portions of the amended complaint read as follows:
IV.
The legal interests to be taken are easements in perpetuity for the construction, use and maintenance of a sanitary sewer line. If the owners of the properties satisfy the prerequisites labeled (1), (2) and (3), below, then these easements will not prevent otherwise legally permissible construction in the easement areas, and prior to or concurrent with the construction the City of Anchorage will at its own expense replace the portion of the sewer line which will be under or within a structure with a sewer line made of a material (e. g., ductile iron) which will not require maintenance during the foreseeable life of the structure, and prior to or concurrent with the construction the City will at its own expense protect the sewer line from the stresses caused by the construction and the structures, and the City will pay reasonable, additional construction costs which are incurred because of the presence of the sewer line;

(1) It is shown that commitments have been made which reasonably establish that construction will commence at a certain date, and
(2) The City is given a reasonable period of advance notice of such construction, and
(3) The City is given permission to, at its option, relocate the sewer line to a location on or off the properties where the sewer line will not conflict with the construction, with the understanding that the City will pay for any damages which the relocation causes to existing improvements.

4. The property owner testified in her own behalf—inconclusively for the most part. She offered no estimate as to the decrease in the fair market value of her property, which might have been brought about either due to the imposition of the easement per se or due to the removal of the trees. She did guess that at least 30 trees would be necessary to fill up the "bare space" left by the construction. (A jury view of the parcels was con-

The appellant owner asserts that the jury's award of no compensation is entirely inadequate and that it violates her constitutional rights under both the fifth amendment to the United States Constitution[5] and art. I, § 18 of the Alaska Constitution[6] which prohibit the taking of private property for public use without just compensation. Specifically, the owner makes three arguments in support of her general allegation that the award is inadequate. First, the owner contends that an award of zero compensation is per se unconstitutional; second, that she is entitled to be compensated in money, not in promises to adjust or relocate the sewer line easement in the future and, third, that she is entitled to treble damages pursuant to AS 09.45.730 or, at least, just compensation for the trees which were removed from the easement area during the course of the sewer line construction.

The constitutional argument is based on scant authority as only one case cited by the owner provides any support for that proposition of law.[7] *Lake Erie & W. R. Co. v. Commissioners of Hancock Co.*,[8] the Supreme Court of Ohio considered the propriety of a jury award of zero compensation after the jury was instructed that "it will be your duty to determine the value of the land so appropriated, . . . and to return the amount in your verdict as compensation due the appellant for the land so appropriated". In reversing and remanding the case, the court stated:

> Notwithstanding this instruction, the jury failed to award the plaintiff in error any amount as compensation for its land over or through which the ditch was to be located and constructed. This, apparently, resulted from the theory on which that action of the jury is sought to be justified in the brief of counsel for the defendant in error, which is that, as the ditch, when constructed across the railroad right of way, will consist only of a pipe or tile placed entirely beneath the surface, there will be no appropriation of the company's land, and therefore no compensation should be allowed the company. That position, we think, cannot be maintained. It seems evident, that any direct encroachment on land, which subjects it to a public use that excludes or restricts the dominion and con-

ducted so that the jury had ample opportunity to assess the impact of the tree removal operation on the property.) The appellant's valuation evidence was presented by Mr. Poe, a real estate appraiser. He refused to conform his opinion to the relevant issue—the reduction in fair market value, if any, caused by the imposition of the easements—but rather, testified as to the full fee value of the easement areas. He concluded that $12,400.00 would be just compensation for the taking, and that $500.00 per tree was a fair replacement cost for an unknown number of trees removed.

5. The fifth amendment to the United States Constitution provides in part:
. . . nor shall private property be taken for public use, without just compensation.

6. Art. I, § 18 of the Alaska Constitution provides:
Private property shall not be taken or damaged for public use without just compensation.

7. Neither of the other two cases relied on by the owner—*Payson v. People*, 175 Ill. 267, 51

N.E. 588 (1898), and *Wabash R. Co. v. Coon Run Drainage & Levee District*, 194 Ill. 310, 62 N.E. 679 (1901)—provides any authority bearing on the constitutionality of an award of zero damages in condemnation cases. Both the cases involve the taking of drainage ditches across the owners' property. In the former, the Supreme Court of Illinois, reversing a jury award of no compensation, held that there had been inadequate notice to the out-of-state property owner, that the benefits accruing to the owner as a result of the ditch could not be used to offset the compensation for the taking itself, and, finally, that the relevant constitutional provision authorizing the taking of drainage ditches (which was silent as to compensation) required compensation in accordance with the superseding taking provision of the state constitution. The same court in *Wabash Co. v. Coon Run Drainage District*, also involving the taking of a drainage ditch, reversed a jury award of $10.50 on the ground that the condemnation procedure authorized by statute grossly violated the owner's right to a jury trial.

8. 63 Ohio St. 23, 57 N.E. 1009 (1900).

trol of the owner over it, is a taking of his property for a public use, within the meaning of that provision of the constitution which guarantees to the owner a right of compensation without deduction for benefits.[9]

Contrary to the facts of the *Lake Erie* case where the jury was instructed to award some compensation, in the case before us the owner did not object to instructions to the jury which expressly permitted the entry of an award of no compensation.[10] Had there been an objection to the instruction or had the owner requested an instruction mandating an award of some compensation, albeit nominal, we would

have squarely before us the issue of whether some compensation should have been awarded. We believe that the constitutional prohibition against taking private property "without just compensation" would under such circumstances require the award of some amount, as the taking of the easement does constitute an appropriation of the owner's property regardless of its minuscule effect.[11] But in view of that failure to object [12] and the fact that the difference between an award of $0.00 compensation and a nominal sum is de minimus, we do not believe that the failure to award compensation per se requires reversal in this case.[13]

9. *Id.* at 1011.

10. Instruction No. 7 provides:
 You are instructed that, based upon the evidence which has been offered in this proceeding, you are to determine the just compensation for each parcel by the following method:
 (a) determine the fair market value of the parcel before the taking of the easement and the construction of the improvements;
 (b) determine the fair market value of the parcel after the taking of the easement and the construction of the improvements;
 If (b) is less than (a), then the difference is the amount to be awarded as just compensation with respect to that parcel. If (b) is equal to or greater than (a), then no compensation is to be awarded with respect to that parcel.
 Instruction No. 10 provides:
 You are instructed that in determining the amount of just compensation to be paid for any tree damage which might have occurred, you are to use the following method:
 a. Determine the fair market value of the parcel before the tree damage occurred;
 b. Determine the fair market value of the parcel after the tree damage occurred;
 If (b) is less than (a), then the difference is the amount of just compensation to be awarded for tree damage on that parcel. If (b) is equal to or greater than (a), then no compensation is to be awarded with respect to tree damage on that parcel.
 Alaska R.Civ.P. 51(a) provides in part:
 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

11. We are not confronted in this case with an issue as to offsetting special benefits conferred upon the remaining property by the construction of the easement. *See* AS 09.55.310(a)(3).

12. *See Martinez v. Bullock*, 535 P.2d 1200 (Alaska, 1975), in which a majority of this court, with Justice Boochever dissenting, held that the giving of jury instructions permitting an award of no damages in a negligence action did not constitute prejudicial error. In *Martinez*, counsel had objected to the instructions and moved for a directed verdict instructing that plaintiffs were entitled to some damages. *See* note 13.

13. The issue of whether a constitutional right to nominal compensation may be waived by failing to object to jury instructions was not raised either in the briefs or arguments on appeal. Since all that is at stake here is the difference between nominal damages and no damages, we refuse to consider the issue *sua sponte*. It has been held that failure to comply with a state procedural rule regarding the proper manner in which to raise a federal constitutional challenge will foreclose consideration of that issue. *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *Williams v. Georgia*, 349 U.S. 375, 75 S.Ct. 814, 99 L. Ed. 1161 (1955). *See also Hensley v. United States*, 406 F.2d 481 (10th Cir. 1968); *United States ex rel. Long v. Pate*, 418 F.2d 1028 (7th Cir. 1967), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1877, 26 L.Ed.2d 294 (1970) (suit for writ of habeas corpus). It is also important to note that those United States Supreme Court decisions which discuss waiver of constitutional rights in the civil context and in which the court indulged every reason-

 We nevertheless must examine the owner's arguments as to the inadequacy of the award. In *State v. 45,621 Square Feet of Land*,[14] we discussed the standard to be used in reviewing a trial court's refusal to grant a new trial after a jury's determination of just compensation in a condemnation case. We quoted from our earlier discussion in *Ahlstrom v. Cummings*,[15] as follows:

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. The circumstances which would require our intervention do not exist here. *From a review of the record we cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.* (emphasis added)

In reviewing the jury's determination of just compensation, we adopted the standard of scrutinizing the record to insure that the verdict is "within the range of the testimony" and "not reflective of any passion or prejudice".[16]

Applying that standard to the evidence presented, we cannot find that the trial court erred in denying the motion for new trial. The case was submitted to the jury, without objection, under instructions which specifically permitted the entry of verdicts of no compensation in the event that there was no difference in the fair market value of the property before the taking of the easement and its value thereafter.[17] A similar instruction to which no objection was taken permitted the jury to determine the fair market value of the property before tree damage occurred and the value

able presumption against their waiver involve fundamental constitutional rights. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972) (basic procedural due process rights of notice and hearing prior to deprivation of property); *Ohio Bell Teleph. Co. v. Public Utilities Comm.*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, 1103 (1937) (procedural due process); *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177, 1180 (1937) (right to trial by jury). We, therefore, do not consider it appropriate to consider whether we have authority to amend the judgment so as to award nominal damages of $1.00. *See* 5 Nichols, The Law of Eminent Domain, § 17.2 (Rev. 3rd ed. Sackman 1974), as to authority of courts to alter a jury's verdict in a condemnation case.

14. 475 P.2d 553 (Alaska 1970).

15. 388 P.2d 261, 262 (Alaska 1964) (footnotes omitted).

16. 475 P.2d at 558. This standard is also entirely consistent with that set forth in Nichol's treatise, *The Law of Eminent Domain*:

> The legal criteria for a determination of whether an award is inadequate or excessive so as to warrant adverse action by the court, are said to be similar to those which govern in common-law actions. Even in the face of conflicting evidence, the court will generally refuse to set aside the award or verdict if there is evidence to sustain the amount awarded and such amount is not palpably inadequate or excessive.
>
> A reversal or modification must be based upon a showing of improper influences, erroneous principles of damage, or evidence, or a complete disregard of the evidence adduced below. The award may not be in excess of the amount claimed by the owner, nor should it be less than the lowest estimate of value testified to by a witness. It has been held, however, that the awarding of such lesser sum, or other difference of opinion between the trier of facts and the witnesses, does not necessarily dictate the setting aside of the award.

5 Nichols, The Law of Eminent Domain, § 17.3 at 17–35, 17–40—17–42 (Rev. 3rd ed. Sackman 1974) (footnotes omitted). Thus, the proper standard for review of condemnation awards is virtually identical to that utilized in review of jury verdicts in common law actions. An award will not be set aside on a claim of inadequacy unless it strikes us as being manifestly unjust, such as being the result of passion or prejudice or a disregard of the evidence or rules of law. *See City of Fairbanks v. Smith*, 525 P.2d 1095, 1098 (Alaska 1974), in which no damage verdict was returned in relation to a loss of consortium claim for relief.

17. *See* Instruction No. 7 quoted *supra*, note 10.

thereafter, and to award damages if the former exceeded the latter. If, however, the value of the land after the damage to the trees equaled or exceeded its prior value, the jury was instructed that no compensation was to be awarded with respect to tree damage.[18]

■ There was competent evidence presented from which the jury could determine that the value of the property was not decreased by the taking of the easement and removal of the unspecified number of trees. Thus, the verdict was within the range of the testimony. Nor is there any indication that the failure to enter an award was the result of any passion or prejudice on the jury's part.

The owner further contends that pursuant to AS 09.55.260(6)[19] trees are a form of private property which must be compensated for when taken and that, since some trees were removed in the course of the construction along the sewer easement line, some amount of compensation is in order. The cases cited by the owner support the general rule that trees are a type of private property which cannot be taken without just compensation.[20]

■ In this case, the jury viewed the premises and must have believed the testimony that the selective removal of some trees without leaving stumps on the steeply sloping area did not detract from the value of the parcels. Nor was there any testimony that the trees had value as timber. The jury was properly instructed to consider any enhancement in the value of the land attributable to the trees and any reduction in the value of the land resulting from their removal.[21] The instructions given the jury, without objection, further allowed an award of no compensation, and thus there was no error in the jury's failure to award compensation for the trees.

■ The owner further contends that she is entitled to treble damages for the unlawful cutting of the trees pursuant to AS 09.45.730.[22] This statute, however, is clearly inapplicable since it provides that an owner be awarded treble damages only when the cutting is unlawful. Here, the tree removal was lawfully accomplished pursuant to the court's order authorizing the City to take possession of the easement areas to install the sewer lines.[23]

Doubtlessly, the jury was influenced in rendering its verdict by the fact that the

18. *See* Instruction No. 10 quoted *supra*, note 10.

19. AS 09.55.260 provides:
The private property which may be taken under §§ 240–460 of this chapter includes

(6) all classes of private property not enumerated may be taken for public use when the taking is authorized by law.

20. *Moore v. Carolina Power & Light Co.*, 163 N.C. 300, 79 S.E. 596 (1913); *Donough v. Mansfield Tel. Co.*, 32 N.E.2d 480 (1937).

21. Instruction No. 10 quoted *supra*, note 10. *See* 4 Nichols, The Law of Eminent Domain, §§ 13.2, 13.21 (Rev. 3rd ed. Sackman 1974), asserting that the removal of vegetable growth should be considered solely as it affects the valuation of the land as a whole.

22. AS 09.45.730 provides in part:
A person who cuts down . . . a tree, timber, or shrub on the land of another person . . . without lawful au-

thority, is liable to the owner of that land . . . for treble the amount of damages which may be assessed in a civil action.

23. The case relied on by the owner is inapposite. In *Mall v. C & W Rural Election Co-Op Assoc.*, 168 Kan. 518, 213 P.2d 993 (1950), the Kansas court held that an owner was entitled to treble damages for the destruction of his trees by the utility company. There, even though the trees were located within the utility's right-of-way, the trial court had found that the cutting of trees was *unnecessary* for the maintenance of the power line. The utility's easement had given it the authority to cut only those trees that were dead, weak, or leaning and in danger of striking its wires. Therefore, the *Mall* case is distinguishable from the instant case in at lease two respects: (1) it involved an easement with a specific limitation on the utility's authority to remove trees, and (2) the trial court found that the cutting there had been totally unnecessary. *See* Kansas statute quoted at 213 P.2d at 997 of the *Mall* opinion.

amended complaint permitted the owner to build in the easement area and required the City, in that event, either to reroute the sewer line or replace it with material not likely to require maintenance. The amended complaint required that the City pay any additional construction costs incurred by the owner due to the presence of the sewer line.

The property owner argues that the City's stipulation in the complaint defining the extent of the easement to be taken constitutes a mere promise of future compensation violating her right to be compensated in money at the time of the taking. The City, on the other hand, contends that the stipulations merely limit the nature of the taking, i. e. it is acquiring less than a permanent easement in the parcel which might otherwise preclude construction by the fee owner. Instead, it has acquired a limited easement in the land, and the amount of damages should be reduced proportionately.

As the owner observes, once it is determined that what is really involved is only promissory, such promises cannot be used to mitigate the amount of compensation due the owner.[24] The problem rests in distinguishing between mere promises and binding contractual stipulations.

While the formalization of the stipulations in the amended complaint and the final decree would appear to constitute a limitation on the taking, we decline to rule on this issue for the following reasons. First, the owner did not file an objection after the City filed its amended complaint and amended declaration of taking. Second, the owner did not object to any of the evidence introduced by the City relating to the definition of the scope of easement being taken as contained in the amended pleadings. This court has frequently held that it will not consider an issue on appeal that has not been raised at the trial court level.[25] Third, even though Instruction 6A contained the definition of the taking found in the amended complaint, the owner failed to object to the instruction as required by Alaska R.Civ.P. 51(a).[26]

Finally, the issue was not set forth in the appellant's statement of points on appeal. Alaska R.App.P. 9(e) warns the parties that the "court will consider nothing but the points so stated". The appellant's statement of points merely repeated her general contention that the award of no compensation was constitutionally inadequate.[27]

Although the court in the interests of justice might relax its rule in a situation where the issue was of some merit,[28] and

24. *State v. Superior Court*, 11 Wash.2d 545, 119 P.2d 694, 706 (1941), wherein it was held:
> The damages occasioned by the taking are estimated as of the time of taking. In the absence of agreement between the parties the condemnor must take the rights which he seeks to appropriate absolutely and unconditionally and he must make full compensation for what he takes. An unaccepted promise to do something in the future in case certain emergencies arise can not affect the character or the extent of the rights acquired and can not be considered as affecting the amount of damages to be awarded. When property is acquired by virtue of the power of eminent domain the compensation of the owner is to be estimated by the actual legal rights acquired by the condemnor and not by the use that he may make of the right.

See *Little v. Loup River Public Power Dist.*, 150 Neb. 864, 36 N.W.2d 261 (1949). See also Annot., 7 A.L.R.2d 364 (1949).

25. See *McCarrey v. Commissioner of Natural Resources*, 526 P.2d 1353, 1355 (Alaska 1974); *State v. McCracken*, 520 P.2d 787, 790 (Alaska 1973); *Jefferson v. City of Anchorage*, 513 P.2d 1099 (Alaska 1973).

26. Quoted in part in note 10 *supra*.

27. The statement of points on appeal reads in its entirety:
> 1. Defendant's right to receive compensation for her property acquired by eminent domain as guaranteed by the State and Federal constitutions was violated by a jury verdict awarding no compensation for a sewer easement taken by the City of Anchorage.

28. See *Jefferson v. State*, 527 P.2d 37, 39 n. 4 (Alaska 1974), where the court refused to consider issues raised in the party's brief "because they were not specified [in his points on appeal] and because they have no merit".

was raised at the trial court level and only inadvertently excluded from the party's statement of points on appeal, this is not such a case. We have repeatedly enforced Appellate Rule 9(e) in situations where an issue was *neither* raised at the trial court level *nor* included in the statement of points on appeal.[29] In all likelihood, the owner did not object to the amended complaint because she was desirous of having the advantage of the City's stipulations. After awaiting the outcome of the trial, she is in no position to raise the issue now. Thus, for all of these reasons, we refuse to consider this issue first presented to us in appellant's brief on appeal.

The judgment below is affirmed.

Affirmed.

ERWIN, J., not participating.

---

29. *See Burford v. State*, 515 P.2d 382 (Alaska 1973); *Moran v. Holman*, 501 P.2d 769 (Alaska 1972). It could be contended that really the only issue raised at this trial was that of just compensation. Therefore, since the adequacy of the "just award" was always in dispute (and was challenged in the owner's points on appeal), the question of whether the redefinition of the take was a mere promise of future compensation cannot properly be considered a new issue raised for the first time on appeal. Such a construction, however, does not constitute a specific reference to the point eventually sought to be raised and, strictly speaking, cannot be considered to be in compliance with Appellate Rule 9(e) which states in part: "The appellant shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal." Otherwise, a statement that the trial court erred would be sufficient. *See Lewis v. Anchorage Asphalt Paving Corp.*, 535 P.2d 1188, 1195 (Alaska 1975).