**Kala LONCAR, Steve Loncar, and Ana Loncar, Appellants,**

v.

**Kenneth Elwood GRAY, Appellee.**

**No. S–9390.**

Supreme Court of Alaska.

Aug. 17, 2001.

---

Charles W. Coe, Anchorage, for Appellants.

John W. Hendrickson, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

### I. INTRODUCTION

Kala Loncar contends that evidentiary decisions in her personal injury trial were prejudicial to her case and resulted in an inadequate jury award. She argues that the superior court erred by admitting evidence of her prior medical history, by precluding evidence of her government medical benefits, by restricting cross-examination of her ex-husband, and by admitting post-accident medical records without foundational testimony from a physician. She also maintains that the superior court erred in denying her motion for a new trial. Because we conclude that the superior court did not abuse its discretion in reaching any of these decisions, we affirm its rulings.

### II. FACTS AND PROCEEDINGS

Kala Loncar was a taxi driver in Anchorage until her injury in a 1995 traffic accident. Although Loncar did not initially appear to be seriously injured in the accident and did not report any loss of consciousness at the time, she soon began to suffer from symptoms apparently related to a closed head injury. Loncar complained of headaches, dizziness, vomiting, nausea, and mental disorientation.

Loncar brought a personal injury negligence action against the other driver, Kenneth Gray. Gray admitted liability, but disputed the amount of damages attributable to the accident. He argued that Loncar had exaggerated her symptoms and had misled her own doctors by falsely claiming to have suffered a loss of consciousness at the time of the accident. He also argued that Loncar's symptoms predated the accident, and called Loncar's ex-husband as a witness to testify that this was the case.

During the trial, Superior Court Judge Sen K. Tan made several evidentiary rulings that Loncar now contests. The court broadly excluded medical records and evidence regarding Loncar's prior medical history, but allowed her estranged ex-husband to testify about her medical history. The trial court also excluded evidence of Loncar's Medicaid and Medicare coverage and testimony on the details of her divorce settlement. In addition, it admitted some medical records without requiring physician testimony to establish a foundation for their admissibility.

The jury awarded Loncar damages for past medical expenses, wage loss, pain and suffering, and loss of enjoyment of life. But it did not award any damages for future expenses, losses, or suffering, or for her children's loss of parental consortium; and the jury's award of $21,435.26 for past medical expenses was only half of the $42,870.52 in medical bills which Loncar entered into evidence. The total award was $29,435.26. Loncar moved for a new trial, but the superior court denied her motion. Loncar now appeals.

### III. STANDARD OF REVIEW

■ We review the trial court's conclusions of law de novo [1] and review its decisions to admit or exclude evidence under the abuse of discretion standard.[2] To prevail on her appeal of the trial court's evidentiary decisions, Loncar must show that those decisions were erroneous and had a substantial influence on the outcome of the case.[3] Under Alaska Civil Rule 61, errors in the admission or exclusion of evidence are grounds for reversal only if failure to reverse "appears to [this] court inconsistent with substantial justice."

■ In reviewing the denial of a motion for a new trial, we have said:

> The decision to grant or deny a new trial is within the trial court's discretion. If there is an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. However, if the evidence supporting the verdict was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust, then we must reverse the denial of a

1. See Walsh v. Emerick, 611 P.2d 28, 30 (Alaska 1980).

2. See Williams v. Utility Equip., Inc., 837 P.2d 1112, 1115 (Alaska 1992).

3. See Myers v. Robertson, 891 P.2d 199, 208 (Alaska 1995) (citing Loof v. Sanders, 686 P.2d 1205, 1209 (Alaska 1984)).

motion for a new trial. In reviewing such denials, we must view the evidence in the light most favorable to the non-moving party.[4]

We will "not interfere with the exercise of [the trial judge's] discretion [to deny a motion for a new trial] except in the most exceptional circumstances and to prevent miscarriage of justice."[5]

## IV. DISCUSSION

### A. Loncar's Pre–Accident Medical History

Loncar argues that the superior court erred in admitting testimony regarding her prior medical history. We conclude that the superior court did not err.

■ Prior to trial, the superior court excluded evidence of Loncar's less recent medical history, including records of doctors' visits in 1983, 1986, and 1989—six to twelve years before the accident.[6] The court's initial order implied, and later reiterations confirmed, that Loncar's medical history during this period would be considered collateral, and all evidence regarding it would be excluded, unless the defense could offer "a medical opinion laying [a] nexus between her prior medical condition and the present medical condition." The court informed the parties that it would require an offer of proof outside the presence of the jury before admitting any records, expert testimony, or lay testimony about the records and associated medical history. Judge Tan later clarified, however, that Loncar's ex-husband would be permitted to testify about her condition at the time immediately before the accident. Taken together, the court's orders established that recent medical history was relevant and admissible, but that longer-term medical history—including Loncar's 1983–1989 medical records—would be deemed collateral unless medical testimony established its relevance.

On the fifth day of trial, Loncar's attorney asked a neuropsychologist, Dr. Paul Craig, questions that Judge Tan later deemed to have opened the door to prior medical history evidence. Loncar asked Dr. Craig whether it would be important for his diagnosis to know if Loncar had suffered similar symptoms "in the year or the two years" before the accident, and whether, if there *had* been prior doctors' appointments, "it's fair to say that the greater the time period between the treatments, the less significant they are." Dr. Craig testified that ongoing pre-injury treatment for serious headaches could be significant, and increasingly significant the closer in time the treatment was to the post-accident headaches.

Loncar's attorney also asked a lay witness, Loncar's friend Gordana Dadic, whether Loncar had complained of headaches or dizziness before the accident; Dadic said no.

Later, despite the apparently still-valid preclusion order, Gray's attorney asked Mike Loncar about his ex-wife's dizziness, nausea, headaches, and vomiting in the ten years before the accident. Mr. Loncar testified that she had complained of the symptoms for that entire period.

Judge Tan admitted the testimony over Loncar's objection, because he found that Loncar herself had opened the door to this line of questioning by asking Dr. Craig about prior ongoing symptoms and treatment. Judge Tan instructed the parties that "Mr. Loncar can testify as to his personal observations of the condition. We're not talking about admitting medical testimony or medical exhibits.... The door is open slightly, but not everything comes in."

Following this ruling, Mr. Loncar's non-expert and allegedly hostile testimony was admitted, but the medical records suggesting that Loncar's previous ailments were far in the past and possibly unrelated to her 1995 accident were not. Loncar did not attempt

---

4. *Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 445 (Alaska 1989) (quoting *Hayes v. Xerox Corp.,* 718 P.2d 929, 933 (Alaska 1986)).

5. *Scavenius v. City of Anchorage,* 539 P.2d 1161, 1166 (Alaska 1975).

6. The records indicate that in 1983 Loncar sought treatment for headaches and nausea, pos-

sibly associated with her recent pregnancy; in 1986 she visited a doctor to complain of headaches, possibly migraines triggered by MSG or other food additives; and in 1989 she complained of breast pain accompanied by intermittent dizziness. These records were never admitted into evidence.

to remedy this disadvantageous situation by moving to modify Judge Tan's earlier preclusion order so that she could bring in the records or other medical history evidence of her own. However, she now argues that the superior court erred in admitting Mr. Loncar's testimony.

■ We conclude that the superior court did not err in ruling that Loncar had opened the door to her ex-husband's testimony. Under our case law, a party may open the door to evidence on a subject by putting that subject at issue in the case.[7] Because Loncar did put her medical history at issue in this case, the superior court was within its discretion in allowing Gray to present Mr. Loncar's testimony about the subject.[8]

We considered the issue of evidentiary door-opening in *Worthy v. State*, a sexual assault case against defendant Conrad Worthy.[9] The prosecution in that case sought to generate sympathy for the victim and antipathy for Worthy by eliciting testimony that the victim had been raped once before, and that Worthy made reference to the previous rape during his assault.[10] But the trial court excluded testimony tending to suggest that the victim's previous rape allegations had in fact been unfounded.[11] We held that the trial court erred in excluding this evidence, because once the prosecution "opened the door" to the subject of the previous rape accusation, the defense was "entitled to litigate the truth or falsity" of that accusation.[12]

It was Loncar who raised the issue of her previous medical history at trial. Thus, the superior court did not err in concluding that Loncar opened the door to Mr. Loncar's lay testimony about her medical history. Dr. Craig introduced the subject in response to Loncar's questions. Moreover, Loncar herself had already elicited lay testimony about medical history from Dadic. Given this background, it was not an abuse of discretion for the superior court to admit additional lay testimony about Loncar's long-term medical history.[13]

Loncar argues that she questioned Dr. Craig about medical history only to cure the defense's insinuations that she had lied to her doctor about her prior medical condition.[14] But Loncar did not object to Gray's insinuations at the time, and she does not now explain why statements by the defense should immunize her own intrusion into the subject area covered by the preclusion order. Loncar also points out that her questions to Dr. Craig carefully focused on the period of one to two years before the accident. However, both Dr. Craig's *replies* and Loncar's own earlier questions to her lay witness raised the issue of ongoing health problems and ongoing treatment.

### B. Medicare and Medicaid Benefits

■ Despite Loncar's challenge, we affirm the superior court's exclusion of evidence

---

7. See *Worthy v. State*, 999 P.2d 771, 775 (Alaska 2000). Because we find that Loncar opened the door to evidence of her medical history, thereby making the evidence independently relevant, we need not decide whether the evidence was actually collateral. See *id.* at 774 (stating that "[w]e need not decide which [rule of admissibility] applies.... Because the state interjected the [possibly collateral issue] into the case and made its occurrence a central part of the case against Worthy, the issue became independently relevant.").

8. We note that Gray inappropriately questioned the witness about medical history without first moving the court for modification of its earlier protective order excluding such evidence. However, because Judge Tan did determine that the door was open to medical history evidence and the protective order was no longer in effect, Gray's failure was harmless.

9. 999 P.2d at 775.

10. See *id.* at 774.

11. See *id.* at 773.

12. *Id.* at 775.

13. See *Landers v. Municipality of Anchorage*, 915 P.2d 614, 616 n. 1 (Alaska 1996) (applying abuse of discretion standard for evidence exclusion decision).

14. Loncar does not properly cite to the record for "the defense's insinuations." (The citations that she lists refer only to Loncar's own examination of Dr. Craig.) She probably means to refer to Gray's question:

   Now, if you knew at that time, through another source of information or however, that the patient had not hit her head and had not lost consciousness, and if you knew from another source that she had had very serious headaches prior to the accident, would that have changed your diagnosis?

regarding Loncar's Medicare and Medicaid benefits.[15] Under Evidence Rule 403, exclusion is appropriate if the evidence's "probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The superior court did not abuse its discretion in applying this standard to exclude Medicaid evidence.

Loncar asserts that she should have been allowed to introduce evidence of her Medicaid coverage for two reasons. First, she claims that the humiliation of accepting public assistance was part of her pain and suffering, and relevant to damages. Second, she argues that the defense opened the door to Medicaid evidence by eliciting from one of Loncar's own witnesses testimony that Medicaid had covered some of Loncar's bills. Loncar claims that she was prejudiced by this evidence because the jury never learned that she was in fact obligated to repay Medicaid benefits out of her award from this lawsuit.[16] Loncar raised the same arguments before the superior court, but the court rejected the arguments and excluded evidence of Medicaid benefits.

### 1. Medicaid evidence and pain and suffering damages

Loncar argues that Medicaid evidence should have been admissible because accepting public assistance caused her additional emotional distress and pain and suffering. The superior court gave Loncar broad leeway to introduce evidence on this claim, explaining:

> Ms. Loncar can testify about her medical condition, she can testify about her medical bills she has had, she can testify about her difficulty in obtaining medical care, she can testify about her bills and the amount that [has] been run up without mentioning insurance.

But if Loncar were permitted to introduce evidence of Medicaid payments, the court continued, the door would be opened to evidence from both sides on the larger issue of insurance payments—and this potentially very large body of evidence would "create more confusion of the issues than ... any probative value it may have." The superior court's conclusion on this issue is not unreasonable and certainly is not an "error [that] affected the substantial rights of a party;"[17] we therefore affirm its ruling on this issue.

### 2. Medicaid evidence and jury concerns about double recovery

There was potential for prejudice against Loncar because the jury heard a reference to her Medicaid coverage, but never learned that Loncar had to repay some benefits out of her recovery in this case.[18] However, the court issued a jury instruction to cure this prejudice, and Loncar did not request any other appropriate relief. Therefore, we will not reverse on these grounds.

■ The collateral source rule "exclud[es] evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages."[19] Under this rule, the superior court appropriately excluded Medicaid evidence at the beginning of the trial.

The jury learned of Loncar's Medicaid coverage, however, when Gray asked one of

---

15. For brevity, this opinion refers to the benefits collectively as Medicaid.

16. *See* AS 47.05.070(b) (establishing Medicaid's subrogation rights to awards or judgments received by aid recipients).

17. *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000).

18. *See* AS 47.05.070(b). Courts reduce awards post-verdict when plaintiffs have already received insurance payments and are not obligated to repay the insurer. *See* AS 09.17.070(c). But courts cannot increase awards in cases where the plaintiff does have to repay her insurer. It is therefore particularly important for courts to ensure that juries are not led by partial evidence of insurance to suspect wrongly that a plaintiff's bills have already been paid, and that an award will constitute double recovery.

19. *Tolan v. ERA Helicopters*, 699 P.2d 1265, 1267 (Alaska 1985). A second prong of the common law collateral source rule, which "prohibit[ed] post-verdict] reduction of plaintiff's damages when he ha[d] received compensation from another source," *id.*, was abrogated by AS 09.17.070. The statute instead requires judges to reduce awards to reflect *unsubrogated* payments from collateral sources. (Unsubrogated payments are payments which the plaintiff will *not* have to reimburse out of her court award.) AS 09.17.070(c).

Loncar's doctors about outstanding bills, and the witness mentioned that Medicaid covered some of them. Loncar's concern is that the jury's exposure to incomplete information about her Medicaid benefits led it to believe that her bills were already covered and that her damages should be reduced accordingly.

But Loncar failed to object when the witness testified. Instead she requested two possible cures, which we discuss below, shortly thereafter. The superior court denied one request and granted the other. We find no error in its actions.

At trial, Loncar argued that Gray had opened the door to further Medicaid evidence, and that she should be permitted to question the witness further on the subject in order to correct any jury misimpressions. She renews the argument in this appeal. But the superior court found that the door was not open to this evidence, and we agree. Gray did not open the door, because he did not make insurance coverage an issue in the case: [20] He neither directly questioned any witnesses about Loncar's insurance [21] nor hinted to the jury that Loncar had another source of funding for her medical bills. Instead, Loncar's witness mentioned Medicaid sua sponte. Given that it was not the defense that brought the Medicaid issue into the trial, we cannot conclude that the superior court abused its discretion in continuing to exclude Medicaid evidence.

At trial, Loncar also requested that the superior court explain in the jury instructions that Loncar was obliged to repay Medicaid. The court agreed that a curative instruction was warranted, and instructed the jury to "award the full amount of necessary medical expenses ... regardless of whether they have been paid or who actually paid the bill. Following the trial, the law provides procedures to ensure that this issue is properly addressed." The instruction did not explicit-

ly detail Loncar's repayment obligations, but Loncar did not object to the form of this instruction at the time that it was proposed. Nor did she propose any alternative instruction. Thus, to the extent that her appeal complains of this instruction, we reject her argument.

We see no abuse of discretion in the superior court's treatment of the Medicaid evidence, and therefore decline to overturn these evidentiary decisions.

### C. *Divorce*

■ Loncar claims that the superior court excluded relevant evidence of her ex-husband's bias by ruling that the couple's divorce proceedings were irrelevant to the case.[22] However, the court never excluded this evidence. It permitted Loncar to question her husband extensively about his alleged bias, his anger over the divorce, and his motives for testifying against her. The only limit which the court placed on Loncar's cross-examination pertained not to bias but to the precise financial terms of the divorce settlement. Therefore, we affirm the trial court's evidentiary rulings regarding the Loncars' divorce.

### D. *Post–Accident Medical Records*

■ Loncar argues that the superior court erred in admitting all of the medical records of testifying physicians and all of the records they relied on. She seems to raise two arguments, both of which are resolved by our recent decision in *Dobos v. Ingersoll.*[23]

Loncar implies that the records of doctors who did not testify are barred as hearsay. However, in *Dobos* we applied Evidence Rule 803 to conclude that medical records "fall squarely within the business records exception to the hearsay rule." [24]

---

**20.** *See Worthy v. State,* 999 P.2d 771, 775 (Alaska 2000).

**21.** When the witness mentioned Medicaid, Gray had asked her only the following: "And I take it you have an outstanding bill of about $16,000?"

**22.** Loncar also now insinuates that some of her ex-husband's testimony was hearsay. She did not raise this objection at trial, and therefore waived it. *See* Alaska R. Evid. 103(a)(1) (requir-

ing a "timely objection or motion to strike ... stating the specific ground of [the] objection"); *Williams v. Utility Equip., Inc.,* 837 P.2d 1112, 1116–17 (Alaska 1992) (holding that plaintiff waived his objection by not making specific objections when testimony was presented).

**23.** 9 P.3d 1020 (Alaska 2000).

**24.** *Id.* at 1027.

Loncar also argues that admission of the records was prejudicial because she did not have the opportunity to cross-examine all of the doctors. However, "if [Loncar] wished to question [the] doctors, [s]he could have called them to the stand [her]self." [25]

### E. Loncar's Motion for a New Trial

The superior court was within its discretion in denying Loncar's motion for a new trial. Loncar argues that the court should have granted her motion because the jury award was unsupported by the evidence. We rejected a similar argument in *Richey v. Oen*.[26]

In *Richey v. Oen*, Richey was injured in a traffic accident. She received a directed verdict on the issue of negligence and presented extensive evidence of back problems, but the jury awarded her no damages.[27] We found that the trial court did not abuse its discretion by denying Richey a new trial. The evidence supporting the verdict was not "so slight and unconvincing as to make the jury's verdict plainly unreasonable and unjust," we concluded.[28] Because the jury had heard "a plethora of conflicting testimony," and because the plaintiff had seemingly sought to conceal her pre-accident history of back problems, an evidentiary basis existed for the jury to find no causation and thus no damages.[29]

 The jury in this case also had an evidentiary basis to doubt both the causation and the extent of Loncar's claimed injury. The jurors heard testimony suggesting that Loncar had experienced the same symptoms before the accident, testimony suggesting that she had misled her doctors about whether she lost consciousness at the time of the accident, and testimony that the doctors' diagnoses would have been different if they had not believed Loncar's claim to have lost consciousness.

Loncar cites cases holding that, where evidence of pain and suffering is uncontradicted,[30] or where a jury awards medical expenses,[31] denial of damages for pain and suffering is inadequate and inconsistent. However, Loncar was not denied damages for pain and suffering—she received a damages award of $2,500 for past pain and suffering. Therefore, these cases are not relevant to her appeal.

### V. CONCLUSION

Because Loncar has not demonstrated that the trial court abused its discretion in any evidentiary decisions or in denying her a new trial, we AFFIRM the decision below.

---

25. *Id.* at 1028.

26. 824 P.2d 1371, 1374 (Alaska 1992).

27. *See id.* at 1372–73.

28. *Id.* at 1375.

29. *Id.* at 1375–76.

30. *See Walker v. Alaska Road Comm'n*, 388 P.2d 406, 407 (Alaska 1964).

31. *See Urban v. Zeigler*, 261 Ill.App.3d 1099, 199 Ill.Dec. 883, 634 N.E.2d 1237, 1242–43 (1994), *rev'd, Snover v. McGraw*, 172 Ill.2d 438, 217 Ill.Dec. 734, 667 N.E.2d 1310, 1314–15 (1996).