NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

AARON B., )
)    Supreme Court No. S-17116
Appellant, )
)    Superior Court Nos. 3PA-14-00198/
v. )    00199 CN
)
STATE OF ALASKA, DEPARTMENT )    MEMORANDUM OPINION
OF HEALTH & SOCIAL SERVICES, )    AND JUDGMENT*
OFFICE OF CHILDREN'S SERVICES, )
)    No. 1732 – July 17, 2019
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

I.    INTRODUCTION

The superior court terminated a father's parental rights to his two children. He appeals, arguing that the superior court abused its discretion by permitting the children's mother to testify telephonically and that her telephonic testimony violated his

---

*    Entered under Alaska Appellate Rule 214.

right to due process. He also argues that the superior court erred in admitting hearsay testimony of two law enforcement officers. He asserts that these errors require a new trial and asks this court to reverse the superior court's order terminating his parental rights. Because the telephonic testimony was not improper and any alleged evidentiary errors were harmless, we affirm the superior court's termination order.

## II. FACTS AND PROCEEDINGS

### A. Facts

Aaron B. and Sandy M. are the biological parents of Andrew and Alaric, who were ages seven and three at the time of the termination order.[1] The Office of Children's Services (OCS) took custody of both children in December 2014 because Alaric tested positive for controlled substances at birth. Since removal Andrew has resided with his paternal grandmother and her husband, and Alaric has resided with non-relative foster parents. In May 2017 Sandy consented to the adoption of both children by their respective caregivers; her parental rights are not at issue in this appeal.

When the children were first removed, OCS's primary concerns regarding Aaron's fitness as a parent were his substance abuse issues and violent behavior. To address these concerns, Aaron's February 2015 case plan required that he complete substance abuse and anger management assessments and follow all recommendations provided by the assessments. The case plan also provided for urinalysis testing twice weekly and parenting classes.

### 1. Aaron's substance abuse and testing history

At OCS's request Aaron completed his first urinalysis test shortly after his children were taken into OCS custody, and he tested positive for methadone and marijuana. The methadone result was consistent with Aaron's prescription from a pain

---

[1]     We use pseudonyms to protect the family's privacy.

clinic to manage chronic ankle and knee pain, and Aaron admitted to using marijuana for pain management. Aaron completed a substance abuse assessment through Akeela House in March 2015, but he later reported he could not follow through with Akeela's treatment recommendations because they required him to taper off of his prescribed pain medications too quickly. While the Akeela assessment found that Aaron met the diagnostic criteria for opioid, cannabis, and nicotine dependence, a November 2015 behavioral health assessment by Alaska Family Services found he did *not* meet the criteria for substance use disorders other than nicotine dependence. The November assessment recommended outpatient treatment so Aaron would be in compliance with OCS expectations, even though he did not meet the level-of-care requirements for treatment; Aaron successfully completed this treatment in February 2016.

While his children were in OCS custody Aaron sporadically participated in the urinalysis testing requirement in his case plan. Aaron consistently tested positive for methadone, oxycodone, and marijuana, per his reported medications; additionally, eight tests were positive for alcohol, two tests were positive for opiates, and one test was positive for methamphetamine. He was also a "no-show" for two scheduled tests during the termination trial in September and November 2017; OCS counts a no-show as a positive test for prohibited substances.

### 2. Aaron's domestic violence history

Prior to OCS's involvement with the family, Sandy petitioned for and received a domestic violence protective order against Aaron. After OCS took custody of the children, Aaron was convicted of assault in the third degree in July 2015 and sentenced to nine months in jail. His conviction resulted from an altercation at a gas station with a former girlfriend and her male companion. When they left the gas station, Aaron followed them in his car, passed them on the highway, and then shot his pistol into a gravel bank ahead of their car. Aaron failed to report to jail for this offense, and a

warrant was issued for his arrest; he began to serve his sentence in November 2016. Aaron was released from custody in May 2017.

Prior to his sentence, Aaron scored in the highest category on a domestic violence risk assessment conducted in October 2015; the assessment indicated there was a 74% chance that men in this category would commit a new domestic assault within a five-year period. The assessor recommended that Aaron complete a 36-week family violence intervention program, outpatient treatment for substance abuse, and a parenting program. When the termination trial began, Aaron had completed 15 of the 36 classes in the family violence intervention program; by the time the termination trial ended, he had completed 21 classes. But because Aaron did not complete the classes within the time allowed by the program, he would be required to start the family violence intervention program over from the beginning.

## B. Proceedings

OCS petitioned to terminate Aaron's and Sandy's parental rights in February 2017. Sandy consented to adoption in May 2017. A trial to terminate Aaron's parental rights took place over five days from September 2017 to March 2018.[2] The superior court heard testimony from Aaron, Sandy, Aaron's sister, his sister-in-law, the OCS caseworker, and four law enforcement officers.

---

[2] It appears the reason for the length of time it took to conduct the trial was because Aaron relinquished his parental rights in January 2018 but then withdrew his relinquishment 10 days later.

Prior to trial Sandy filed a motion to testify telephonically pursuant to Alaska Child in Need of Aid (CINA) Rule 3(g)[3] and Alaska Civil Rule 99(a).[4] Sandy argued that good cause existed for her to testify telephonically because she suffered from stress-induced epilepsy and, given her history of domestic violence with Aaron, she feared being in the same room with him and worried the stress could trigger a seizure. Aaron opposed her motion on the bases that Sandy had not demonstrated good cause and that it is "more difficult for the court to assess the credibility of a witness over the telephone." He argued that the court's determination of Sandy's credibility was important because OCS intended to rely on her allegations of domestic violence to support termination of his parental rights. The court granted Sandy's motion, and she testified telephonically at trial regarding her nine-year relationship with Aaron, the domestic violence she experienced, and Aaron's drug usage during that time.

Over the course of the termination proceedings Aaron had several encounters with law enforcement that resulted in arrests and felony charges. In December 2017 Aaron was cited for shoplifting. At trial a police officer testified that Aaron was handcuffed when the officer arrived at the store; the officer explained this indicated that Aaron had resisted detention by the store's employees. Aaron objected to this statement as inadmissible hearsay, but the court allowed the testimony.

Later in December a traffic stop occurred; Aaron was suspected of being under the influence of a substance, but he drove away from the stop and eluded pursuit.

---

[3] CINA Rule 3(g)(1) ("The court may conduct any hearing with telephonic participation by one or more parties, counsel, witnesses, foster parents or out-of-home care providers, or the judge.").

[4] Alaska R. Civ. P. 99(a) ("The court may allow one or more parties, counsel, witnesses or the judge to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties.").

Shortly thereafter Aaron was a passenger during another traffic stop; he was subsequently charged in relation to the first traffic stop with felony eluding and driving while his license was suspended. The second traffic stop also resulted in charges against Aaron for possession of a stolen firearm and being a felon in possession of a firearm. The arresting officer testified at trial that he also intended to file charges for misconduct involving a controlled substance. Aaron objected to two of the statements by the arresting officer as inadmissible hearsay: (1) that the driver of the car told the officer that the stolen gun was Aaron's and that Aaron asked the driver to claim the gun as his own, and (2) that a substance found in a briefcase on the floor of the passenger seat later tested positive for heroin. The court allowed both statements.

Aaron was arrested again in January 2018 after a third traffic stop and was charged with being a felon in possession of a firearm, driving under the influence, refusal to submit to a chemical test, being intoxicated while in possession and control of a weapon, and providing false information. At the time of the termination trial, Aaron had been indicted on the charges for felony eluding, for driving with a revoked license, and for being a felon in possession of a firearm.

The superior court terminated Aaron's parental rights in May 2018. The court found that Andrew and Alaric were children in need of aid under AS 47.10.011 subsections (1) (abandonment), (2) (incarceration), (6) (risk of physical harm), (8) (risk of mental injury), (9) (neglect), and (10) (substance abuse). The court found that Aaron failed to remedy the conduct or conditions that placed the children at substantial risk of harm and that returning the children to Aaron would likely result in serious mental or

physical injury,[5] that reasonable but unsuccessful reunification efforts had been made,[6] and that terminating Aaron's parental rights was in the best interests of the children.[7]  In making these findings, the court focused on Aaron's continued substance abuse issues, unresolved domestic violence issues, and pending criminal charges.

Aaron does not challenge any of these findings on appeal.  He instead argues that the superior court abused its discretion and violated his due process rights when it permitted Sandy to testify telephonically.  He also argues that the aforementioned testimony by law enforcement officers constituted inadmissible hearsay and that this erroneously admitted evidence affected the court's decision to terminate his parental rights.  He contends that these errors warrant a new trial and that we should reverse the superior court's order terminating his parental rights.

## III.   STANDARDS OF REVIEW

"We review decisions regarding the telephonic appearance of a party for abuse of discretion,"[8] and we have "noted that procedural rules, such as those providing for telephonic testimony, 'should be interpreted liberally in order to avoid determinations based on technicalities.' "[9]  We will find that a trial court abused its discretion if "the

---

[5]     *See* AS 47.10.088(a)(2); CINA Rule 18(c)(1)(A).

[6]     *See* AS 47.10.088(a)(3); CINA Rule 18(c)(2)(A).

[7]     *See* AS 47.10.088(c); CINA Rule 18(c)(3).

[8]     *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811, 817 (Alaska 2003).

[9]     *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 515 (Alaska 2015) (quoting *Rollins v. Leibold*, 512 P.2d 937, 941 n.8 (Alaska 1973)).

reasons for the exercise of discretion are clearly untenable or unreasonable."[10] Whether a party's due process rights were violated is a question of law that we review de novo,[11] and we will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[12]

"We review the trial court's decision to admit evidence under a hearsay exception for abuse of discretion."[13] To prevail on appeal of a trial court's evidentiary decisions, an appellant "must show that those decisions were erroneous and had a substantial influence on the outcome of the case. . . . [E]rrors in the admission or exclusion of evidence are grounds for reversal only if failure to reverse 'appears to [this] court inconsistent with substantial justice.' "[14]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion Or Violate Aaron's Right To Due Process By Allowing Sandy To Testify Telephonically.

Aaron argues that the superior court abused its discretion by allowing Sandy to testify telephonically because she did not demonstrate good cause under Civil Rule 99(a) and because he was substantially prejudiced by the lack of meaningful

---

[10]   *Burke v. Maka*, 296 P.3d 976, 980 (Alaska 2013) (quoting *Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970)).

[11]   *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1134 (Alaska 2001).

[12]   *Barcott v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 741 P.2d 226, 228 (Alaska 1987) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[13]   *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000).

[14]   *Loncar v. Gray*, 28 P.3d 928, 930 (Alaska 2001) (third alteration in original) (quoting Alaska R. Civ. P. 61).

cross-examination.[15] OCS argues that the superior court did not abuse its discretion under Rule 99(a) because (1) this court interprets "good cause" liberally, (2) Sandy "had good cause to testify telephonically because she feared that her stress-induced seizures would worsen," and (3) Aaron "did not demonstrate substantial prejudice because he effectively cross-examined Sandy over the phone, and her credibility was not central to the court's decision to terminate his parental rights."

Aaron's argument ignores that Sandy's motion for telephonic testimony was also based on CINA Rule 3(g). Under CINA Rule 3(g) "[t]he court may conduct any hearing with telephonic participation by one or more parties, counsel, witnesses, foster parents or out-of-home care providers, or the judge." And the CINA rules "govern practice and procedure in the trial courts in all phases of child in need of aid proceedings."[16] We note that it remains an open question whether motions for telephonic testimony in CINA cases should be evaluated under CINA Rule 3(g), Civil Rule 99(a), or both.[17] But the parties did not brief this question and we are not called upon to decide it here. We conclude that the superior court did not abuse its discretion by permitting Sandy to testify telephonically because her testimony was permissible under either CINA Rule 3(g) or under the stricter "good cause" and "absence of substantial prejudice" requirements of Civil Rule 99(a).

---

[15] *See* Alaska R. Civ. P. 99(a) ("The court may allow one or more parties, counsel, witnesses or the judge to participate telephonically in any hearing or deposition for good cause and in the absence of substantial prejudice to opposing parties.").

[16] CINA Rule 1(b).

[17] *See Dena M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-17154, 2019 WL 2480284, at *4 (Alaska June 14, 2019) (noting that it was "not necessary for us to decide whether allowing telephonic testimony was proper statutorily or constitutionally, because we conclude[d] that any possible error did not impact the parents' ability to present their case and was harmless").

We have previously concluded that good cause existed to permit a witness to testify telephonically where the witness had limited mobility and also had a protective order against the respondent.[18] Given the underlying circumstances here, and our preference for a liberal application of Civil Rule 99,[19] it was not unreasonable for the superior court to find that good cause existed to permit Sandy to testify telephonically. And Aaron has not demonstrated how he was substantially prejudiced by Sandy's telephonic testimony; his attorney had the opportunity at trial to confront her allegations and to meaningfully cross-examine her. The superior court did not abuse its discretion by permitting Sandy to testify telephonically.

Aaron also argues that Sandy's telephonic testimony violated his right to due process. But as discussed above, Aaron has failed to demonstrate any plausible resulting prejudice from her telephonic testimony, and he has not demonstrated how Sandy testifying in person would have reduced the risk of erroneous termination of his parental rights.[20] Again, Aaron's attorney had the opportunity to meaningfully cross-

---

[18]     *See In re Hospitalization of Jacob S.*, 384 P.3d 758, 765 (Alaska 2016).

[19]     *See Silvers v. Silvers*, 999 P.2d 786, 790 (Alaska 2000) (noting "our preference for a liberal application of Rule 99").

[20]     *See Sarah A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 427 P.3d 771, 780 (Alaska 2018) (noting that we have "denied due process claims where a parent failed to identify any 'plausible' basis for finding prejudice or did not theorize about how the requested procedural safeguard might 'potentially alter[] the findings about . . . parental conduct' " (alterations in original) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 210-11, 213 (Alaska 2000))); *D.M.*, 995 P.2d at 212 ("[A] theoretical possibility of prejudice is not enough; to decide . . . whether due process was denied, a court must assess 'the probable value' of [the requested procedure] in reducing the risk that parental rights might be erroneously terminated." (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

examine Sandy, and Aaron thus had the opportunity to protect his interests at trial.[21] We have rejected similar due process challenges to telephonic testimony, noting that "[t]he routine nature of [telephonic] appearances belies [the appellant's] due process concerns."[22] Telephonic testimony by parties and witnesses is common practice in CINA proceedings; in fact, three other witnesses testified telephonically at Aaron's termination trial. We conclude that Sandy's telephonic testimony did not deprive Aaron of his due process rights.

**B.      Any Error In Admitting Hearsay Testimony Was Harmless.**

Aaron challenges portions of the testimony of two law enforcement officers at his termination trial as inadmissible hearsay, specifically (1) statements by the officer who cited Aaron for shoplifting that Aaron was handcuffed when he arrived and that the store only handcuffs shoplifters who resist detention; (2) statements by the officer who arrested Aaron after the second December 2017 traffic stop that the driver of the car told the officer that the stolen gun found in the car was Aaron's and that Aaron asked the driver to claim the gun as his own; and (3) a statement by the same officer that the substance found in a briefcase on the floor of the passenger seat later tested positive for

---

[21]      In a due process analysis, we evaluate whether "failure to provide the requested procedure deprives the parent of a sufficient opportunity to present a case." *See Alex H. v. State, Dep't of Health & Soc. Servs.,Office of Children's Servs.*, 389 P.3d 35, 50 (Alaska 2017). This assessment requires consideration of "the issues presented in a termination proceeding, and a parent's ability to protect [his] interests at the . . . proceedings." *Id.* (second alteration in original) (quoting *D.M.*, 995 P.2d at 212-13).

[22]      *Disciplinary Matter Involving Triem*, 929 P.2d 634, 642 (Alaska 1996); *see also E.J.S. v. State, Dep't of Health & Soc. Servs.*, 754 P.2d 749, 752 (Alaska 1988) (finding "no merit in [appellant's] claim that he was denied . . . his due process right to confront and cross-examine witnesses against him due to his inability to hear the proceedings," because "the transcript shows that [he] could hear well enough to follow the proceedings . . . [and] telephonic participation in judicial proceedings is provided for by court rule").

heroin. Aaron argues that the superior court relied on those hearsay statements in its decision to terminate his parental rights, and he is therefore entitled to a new trial.

To prevail on this issue Aaron must show that the superior court's evidentiary decisions "were erroneous *and* had a substantial influence on the outcome of the case."[23] Errors in the admission of evidence "are grounds for reversal only if failure to reverse 'appears to [this] court inconsistent with substantial justice.' "[24] We will assume without deciding that the superior court erred in admitting these statements. But any error was clearly harmless. Andrew and Alaric were found to be children in need of aid under six different provisions of the CINA statute.[25] Aaron has not challenged the factual findings underlying any of the six grounds for termination. And as we have repeatedly said, only one CINA finding is required to support the termination of parental rights.[26]

We affirm the termination of Aaron's parental rights based on his ongoing substance abuse issues. Ignoring the officer's statement about the substance testing positive for heroin, the superior court's CINA finding under AS 47.10.011(10) was supported by substantial other evidence, including (1) Aaron's positive drug tests and no-shows for testing; (2) testimony by Sandy regarding Aaron's past drug usage; (3) testimony by Aaron's sister-in-law that she found tin foil with a burnt substance on it in the room in her home where Aaron was staying, which she thought indicated drug use;

---

[23]     *Loncar v. Gray*, 28 P.3d 928, 930 (Alaska 2001) (emphasis added).

[24]     *Id.* (alteration in original) (quoting Alaska R. Civ. P. 61).

[25]     These were AS 47.10.011(1) (abandonment), (2) (incarceration), (6) (risk of physical harm), (8) (risk of mental injury), (9) (neglect), (10) (substance abuse).

[26]     *See, e.g.*, *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 618 (Alaska 2007).

and (4) testimony by two different officers who conducted two separate traffic stops where they each suspected Aaron was under the influence of a controlled substance,[27] including one incident where drug paraphernalia was found in the car with Aaron. This evidence was sufficient to find Andrew and Alaric to be children in need of aid under AS 47.10.011(10).[28] The admission of the alleged hearsay statements did not affect the outcome of the case and therefore any error was harmless.

## V.    CONCLUSION

We AFFIRM the superior court's termination of Aaron's parental rights to Andrew and Alaric.

---

[27]    In the first December 2017 traffic stop the officer received a report for a welfare check for a man who was passed out in his truck on the side of the road. The officer found Aaron in the truck and suspected he was under the influence of a substance because he was slow to respond, had slurred speech, and had bloodshot, watery eyes. In the January 2018 stop Aaron was found "slumped over in the driver's seat, hands crossed in his lap, kind of leaning a little bit to his right, head down, chin basically on his chest, and he was drooling. His right foot was on the brake and the vehicle was in drive." The officer suspected Aaron to be under the influence of a substance because he had pinpoint pupils, his speech was slurred, he was drooling, and he was continually "on the nod."

[28]    *Cf. David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 777 (Alaska 2012) (affirming the superior court's CINA finding under AS 47.10.011(10), noting that because father's "incarceration was 'at least partially' related to drugs, this provision is satisfied").